HMH PUBLISHING COMPANY, Inc., a corporation, and Playboy Clubs International, Inc., a corporation, Plaintiffs,

v.

Othal L. TURNER and On-The-Town, Inc., a Georgia corporation, doing business as Atlanta's Playboy Club, Defendants.

Civ. A. No. 8429.

United States District Court
N. D. Georgia,
Atlanta Division.

Sept. 13, 1963.

146

Smith, Field, Ringel, Martin & Carr, Atlanta, Ga., for plaintiffs.

Hatcher & Irvin, Atlanta, Ga., for defendants.

MORGAN, District Judge.

The plaintiffs in the above-styled case filed a complaint in this Court on June 19, 1963, charging that the defendants have wilfully adopted the trade-marks and service-marks of the plaintiff HMH and have thereby wilfully infringed on the trade-marks and service-marks of the plaintiff HMH with the intention and for the purpose of passing off their business as a business licensed, sponsored, approved, recommended, or somehow connected with the plaintiff HMH or its nationally known magazine, Playboy, or with the Key Clubs licensed by the plaintiff HMH. The plaintiffs contend that the defendants have engaged and are engaging in unfair trade practices and unfair competition against the plaintiffs, have improperly realized profits, and will continue to cause plaintiffs irreparable harm and to realize profits improperly unless enjoined by this Court. The plaintiffs therefore ask the Court to issue an injunction and that the defendants and each of them be preliminarily and perpetually enjoined from using directly or indirectly the trade-mark and service-mark "Atlanta's Playboy Club" or any confusingly similar mark in connection with the operation of the night club or restaurant or any other business. The plaintiffs also ask that the defendants be required to pay to the plaintiffs such damages as they have sustained in consequence of the defendants' unfair

trade practices and acts, infringement and dilution of the rights of the plaintiff HMH in and to its said trade-mark and service-mark "Playboy".

The Court, on June 19, 1963, issued an order directing the defendants to show cause on July 9, 1963, why the prayers of the plaintiffs for a preliminary injunction should not be granted. After two postponements, this hearing was held on July 30, 1963; the parties to the case were heard; and counsel were directed to file briefs in support of their positions in the matter.

## DISCUSSION

The matter which addresses itself to the Court at this time concerns the issue of whether a preliminary injunction should be issued by the Court against the defendants. The counsel for the defendants, in his brief, cites much authority to the effect that this is not a proper case for the issuance of a temporary injunction, as there must be strong evidence indicating probable success to the petitioner in the final trial and there must be a showing that irreparable injury will result to the petitioner during the pendency of the action if the injunction is not granted. Defendants' counsel contends that even though this is not a final trial, the effect of the grant of a temporary injunction would be to terminate the case in favor of the plaintiffs without the defendants being afforded the normal time necessary to prepare for final trial and without the defendants at all being accorded a trial on oral evidence with the sifting benefits of cross-examination.

This is a petition under the Lanham Trademark Act for an order enjoining infringement on a valid trade-mark. HMH corporation initially got a trade-mark on the word "Playboy" for a magazine. Later, an application for a trade-mark for a Key Club on a night club operation utilizing the name "Playboy Club" was applied for, predicated upon the success of the magazine, Playboy, and the identification of the night club

with the magazine. Additional operations were started in other cities and were associated in the public mind with the original club and its association with Playboy magazine. These clubs received great publicity and were known throughout the country as a particular type and operation of night club. Persons in every state in the Union hold keys to these clubs and attend them on the assumption that they are the clubs operated by the plaintiff.

After a great deal of publicity had been given to the plaintiffs' night club, the defendants opened a night club in Atlanta called "Atlanta's Playboy Club". According to the plaintiff, a number of persons did in fact think that this was a part of the national Playboy organization, and, on that basis, attended the defendants' club. Many people wrote rather indignant letters to the petitioners because it was not one of their clubs when they had thought it was, and if it was, it was not up to the standard normally used by the plaintiffs in their clubs. The plaintiffs point out in their brief that it may be well to note that the use of the possessive in the name of such an organization indicates that it is part of a group of such clubs.

The basic protection of a trade-mark is the right to use a name identified with a particular operation, program or product. Baker v. Simmons, Co., 1 Cir., 307 F.2d 458. The more general the public acceptance of a particular name, whether it be generic, descriptive or secondary, as the identity of a product, the stronger the trade-mark protection; and the more obvious and subtle the attempt to utilize the value of that trade-mark by unfair competition, the more urgent the need for injunctive relief. Whitley Grocery Company v. McCaw Manufacturing Company, 105 Ga. 839, 32 S.E. 113.

It seems to this Court that the evidence is inescapable in establishing that to the general public the words "Playboy" and "Playboy Club" have a definite positive meaning, both as to the

type of operation and the source of operational control. The fact that one deals with a publication and the other with a night club operation is immaterial, since the two are intermeshed in the public mind. Esquire, Inc. v. Esquire Slipper Manufacturing Company, 1 Cir., 243 F.2d 540; Ambassador East, Inc. v. Orsatti, Inc., 3 Cir., 257 F.2d 79.

The Court feels that this is a proper case for injunctive relief. The plaintiffs have expended large sums of money to establish and maintain in the public eye certain standards of decor and conduct in their clubs. If the defendants do not conduct their club with the same propriety or demeanor, this publicity would obviously be injurious to the plaintiffs' reputation and the good will built up over many years. As the plaintiffs are desirous of opening up a new club in Atlanta, the Court feels that they are entitled to protection from infringement upon their trade-mark.

## FINDINGS OF FACT

### 1.

Plaintiffs are citizens of the State of Illinois and Delaware. The individual defendant is a citizen of the State of Georgia, and the corporate defendant is incorporated under the laws of the State of Georgia and doing business in the City of Atlanta, Georgia.

### 2.

The plaintiff HMH Publishing Company, Inc., (herein referred to as HMH) at all times herein mentioned, was and still is a corporation duly organized and existing under and by virtue of the laws of the State of Illinois with its principal office and place of business in the City of Chicago, Illinois.

### 3.

The plaintiff Playboy Clubs International, Inc. (herein referred to as Playboy Clubs) is a corporation organized and existing under and by virtue of the laws of the State of Delaware.

### 4.

For many years, plaintiff HMH has published, sold and distributed throughout the United States a monthly magazine under the trade-mark Playboy, distributed through the usual channels of the trade. Playboy magazine is sold and distributed throughout the United States (including the City of Atlanta and the State of Georgia) and enjoys a large circulation of upwards of 1,000,000 copies per month and an excellent reputation, not only for its general contents but as an advertising medium. Said Playboy magazine, at all times herein referred to, has been written, prepared, arranged and composed by plaintiff HMH or for it by its officers, agents and employees, and plaintiff HMH has been and is the author and proprietor of each of the issues thereof within the meaning of Section 62 of the Copyright Act of 1909, as amended (17 U.S.C. § 62.) [1]

### 5.

Playboy magazine has a large and valuable goodwill, rapidly growing circulation and advertising volume, identified by the term "Playboy" and plaintiff HMH derives substantial profits from the publication and sale thereof. The total gross income of the plaintiff HMH for the year 1962 exceeded $12,000,000.-00. Plaintiff HMH has extensively advertised its trade-mark "Playboy" throughout the United States, including the City of Atlanta and State of Georgia, in magazines circulating nationally and in other media, including advertising over television on the program previously conducted by plaintiff and known and identified as "Playboy's Penthouse".

### 6.

For a number of years, plaintiff HMH has continuously sold in interstate and intrastate commerce and advertised under its trade-mark and service-mark Playboy services and consumer items, such as travel tours, phonograph records, books, shirts, cocktail napkins, cocktail glasses, liquor bottle holders, garters,

---

1. Now 17 U.S.C.A. § 26.

ties, matches, playing cards, pajamas, cuff links, pins and earrings.

#### 7.

The plaintiff HMH has widely publicized the name "Playboy" through its magazine and through the sale of said consumer items so that the said trade-mark has become and is identified by the general public with plaintiff HMH and its products.

#### 8.

On December 28, 1954, the United States Patent Office issued to plaintiff HMH Certificate of Trade Mark Registration No. 600,018 for the trade-mark "Playboy" for a monthly magazine. On March 5, 1963, the United States Patent Office issued to plaintiff HMH Certificate of Trade Mark Registration No. 746,367 for the service-mark "The Playboy Club" for operating private social clubs which feature food, drinks and entertainment. At all times since the issuance of each of the foregoing registrations, plaintiff has been and still is the owner of each of said trade-marks, service-marks, and trade-mark and service-mark registrations. Each of the trade-mark and service-mark registrations listed and referred to herein are valid and subsisting.

#### 9.

About December of 1959, plaintiff HMH began to solicit membership applications for a Playboy Key Club in Chicago, Illinois, featuring food, drink and entertainment, and made plans for opening such a Key Club identified by the trade-mark and service-mark "Playboy" and, shortly thereafter, granted a controlled license to the plaintiff Playboy Clubs, giving it the exclusive right to use and/or sublicense (under controlled licenses) said marks as service-marks to identify Key Clubs operated by it in Chicago, Illinois, and in other principal cities in the United States. Since January, 1960, sublicensees of plaintiff Playboy Clubs have continuously used the service-mark "Playboy" for their Key Clubs and since about the middle of 1960, similar Key Clubs have been opened by sublicensees of plaintiff Playboy Clubs and are now operating in Miami, Florida; New York, New York; Phoenix, Arizona; New Orleans, Louisiana; and St. Louis, Missouri, under said trade-marks and service-marks, and similar Key Clubs will shortly be opened by sublicensees of plaintiff Playboy Clubs in Los Angeles, California; Detroit, Michigan; Baltimore, Maryland; and San Francisco, California, which said Key Clubs will likewise be identified by said trade-marks and service-marks. Plaintiff HMH has exercised great care in the selection of such licensees and is controlling and has controlled the nature and the quality of the services rendered at the Key Clubs operating in said cities under and in association with said trade-marks and service-marks, to the end that the nature and quality of such services would be compatible with the nature and quality of the magazine and products of plaintiff HMH and its goodwill symbolized by said trade-marks and service-marks. Plaintiff HMH has taken an active part in promoting said Key Clubs operated under its said trade-marks and service-marks and the consuming public recognizes the Key Clubs and the services of such licensee under said trade-marks and service-marks as having been approved, licensed or sponsored by plaintiff HMH. Plaintiff's said trade-marks and service-marks when used in connection with a restaurant, night club, or similar business, mean and are understood to mean to the general purchasing public a restaurant, night club or similar business licensed, approved, sponsored, recommended or somehow connected with plaintiff HMH. As a result of advertising and promotion, the plaintiff Playboy Clubs International, Inc., has a membership of over 193,000 members, residing in every state in the United States, including the State of Georgia.

#### 10.

Notwithstanding plaintiffs' adopting, using and publicizing their aforesaid name, trade-marks and service-marks, and the creation of the aforesaid public demand and goodwill therefor, upon in-

**150**

formation and belief, the individual defendant, for the deliberate purpose of creating confusion and deception so as to reap for himself the benefit of, and trade upon, the valuable goodwill, esteem, reputation and publicity of plaintiffs' name, trade-marks and service-marks, formed the corporate defendant and caused said corporate defendant to adopt the name "Atlanta's Playboy Club" for its restaurant and night club operation and caused said corporation to operate its business under the name "Atlanta's Playboy Club", and to extensively advertise its said business under said name.

In the alternative, the corporate defendant committed the above acts and is presently operating and advertising an establishment in the manner hereinabove described, using the aforesaid infringing name, trade-marks and service-marks. The use by said defendant of the name "Playboy" is without authority or consent of plaintiffs, and for the purpose and with the intent of appropriating to defendant, and trading upon, the plaintiff's goodwill, fame and reputation. Such use by the said defendant of the name "Playboy" infringes plaintiffs' said name, trade-marks and service-marks, has led and is likely to continue to lead to confusion, mistake and deception to the public, and has led and will continue to lead the general public to suppose that plaintiff HMH has licensed, sponsored, recommended, approved or is somehow connected with the defendant or with its business, or that plaintiff HMH controls the nature and quality of the services said defendant renders.

**11.**

The defendants wilfully adopted the trade-marks and service-marks of the plaintiff HMH and have thereby wilfully infringed the trade-marks and service-marks of the plaintiff HMH, with the intention and for the purpose of passing off their aforesaid business as a business licensed, sponsored, approved, recommended or somehow connected with the plaintiff HMH or its nationally known magazine Playboy, or with the Key Clubs licensed by the plaintiff HMH.

**12.**

Plaintiff HMH has given defendants notice that the use by them of the term "Atlanta's Playboy Club", as aforesaid, constitutes infringement of the rights of plaintiff HMH in and to its said trade-marks and service-marks and unfair competition with plaintiffs. Notwithstanding said notice, defendants have continued to use the name "Atlanta's Playboy Club" as a service-mark for identifying defendants' said night club and restaurant.

From the foregoing findings of fact, the Court makes and enters the following

## CONCLUSIONS OF LAW

**1.**

The matter in controversy exceeds the sum or value of $10,000.00 exclusive of interest and costs.

**2.**

Jurisdiction is founded on diversity of citizenship and the requisite amount involved, and is also founded on the existence of questions arising under the laws of the United States. This action arises under the Lanham Act of 1946, 15 U.S.C. §§ 1057(b) and 1116, and under Sections 1332 and 1338 of the Judicial Code (28 U.S.C. §§ 1332, 1338).

**3.**

Venue is properly laid in this district pursuant to Section 1391, Title 28 United States Code.

**4.**

Defendants' use of the name "Atlanta's Playboy Club", in connection with their business, has and will continue to damage the rights of the plaintiff HMH in and to the names and marks of "Playboy" and the goodwill symbolized thereby, because the public, by reason of the popularity of said trade-marks and service-marks, has been and is likely to continue to be deceived or confused into believing that there is some trade connection between plaintiffs and defendants.

## 5.

Plaintiffs have sustained substantial damages by reason of defendants' interference with plaintiff Playboy Club's exclusive right to use the trade-marks and service-marks "Playboy" licensed to it by plaintiff HMH.

## 6.

The defendants have wilfully interfered with the legitimate extension of the business of the plaintiffs in the operation of their Playboy Key Clubs.

## 7.

The defendants, by the acts above alleged, have engaged and are engaging in unfair trade practices and unfair competition against the plaintiffs, have improperly realized profits, and will continue to cause plaintiffs irreparable harm and to realize profits improperly, unless enjoined by this Court.

## 8.

The defendants, their agents, servants, employees and attorneys, and all those in active concert and participation with the defendants, and each of them, are, until further order of the Court, restrained and enjoined from:

(a) Using, directly or indirectly, the trade-mark and service-mark "Atlanta's Playboy Club" or any confusingly similar mark, in connection with the operation of the night club and restaurant or any other business;

(b) Using "Playboy" (in any phonetic spelling or misspelling) or any mark or name confusingly similar thereto, or which in any manner includes the word "Play", under which to conduct a night club and restaurant or any other business; and

(c) Performing any acts having the effect of, directly or indirectly, representing that any business operated or owned by defendants is connected with plaintiff HMH or is sponsored, approved, recommended or licensed by plaintiff HMH.

Counsel for the parties herein will submit affidavits to this Court on or before October 1, 1963, as to what would amount to reasonable attorneys' fees for the plaintiffs in this action.

It is so ordered.