THE GREAT ATLANTIC AND PACIFIC TEA COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. A & P TRUCKING CORPORATION, A NEW JERSEY CORPORATION, AND ARTHUR E. IMPERATORE, ARNOLD D. IMPERATORE, GEORGE IMPERATORE, EUGENE IMPERATORE AND EILEEN IMPERATORE, DEFENDANTS-RESPONDENTS.

Argued February 3, 1959—Decided March 17, 1959.

456

Mr. John Milton, Jr. argued the cause for appellant (*Messrs. Milton, McNulty & Augelli,* attorneys; *Messrs. Sylvester J. Liddy* and *Joe E. Daniels,* of the New York Bar, of counsel; *Mr. Angelo A. Mastrangelo,* on the brief).

Mr. Milton T. Lasher argued the cause for respondents.

The opinion of the court was delivered by

WEINTRAUB, C. J. Plaintiff sued to enjoin defendants from using the symbol "A & P." The Chancery Division found generally for defendants but gave some limited relief, and the Appellate Division ordered a slight extension of the restraint. 51 *N. J. Super.* 412 (*App. Div.* 1958). We granted plaintiff's petition for certification. 28 *N. J.* 147 (1958).

The facts appear in the opinion of the Appellate Division. For many years the symbol "A & P" has been widely established as a trade-mark on food products merchandised by plaintiff and a trade-name in its operation of a vast chain of retail stores and supermarkets. The symbol was unmistakably identified with plaintiff in 1945 or 1946 when a partnership was formed under the name of A & P Trucking Company and in 1947 when the corporate defendant was organized to succeed it.

There is no competition, present or prospective, between the litigants. The corporate defendant is a common carrier, whereas plaintiff is engaged in the field just described. But each is concerned with trucking. Some 9,000 vehicles, owned either by plaintiff or its contract carriers, serve plaintiff's national needs and bear the symbol "A & P." Defendant's trucks carry the same symbol either in isolation or as part of defendant's full corporate name. Trucks of both parties move extensively in the same territory.

There being no competition, the question arises whether plaintiff may nonetheless be granted relief. Defendants do not seriously contend that today equity will act only when the litigants compete for the same customer. Early holdings to that effect, reflected for example in *National Grocery Co.*

*v. National Stores,* 95 *N. J. Eq.* 588 (*Ch.* 1924), affirmed 97 *N. J. Eq.* 360 (*E. & A.* 1925), have yielded to a demand for a higher level of commercial morality and to the needs of a changing economy. Huge sums are expended in advertising both the product and the producer. Goodwill is a sensitive asset, particularly vulnerable today by reason of mobility of population and the media of mass communication. Industrial enterprises tend to diversify, entering fields alien to the area of initial success. Hence the consumer may more easily be misled by identical or simulated marks or names, notwithstanding differences in product, service or geographical area of operation. For this reason, the possessor of a valuable, well-regarded name may experience the ill-repute of another who employs it, despite the absence of direct competition between them.

The emphasis today is upon protection against unfair trade practices whether or not competition exists. Judge Learned Hand well expressed the thesis in *Yale Electric Corporation v. Robertson,* 26 *F. 2d* 972, 974 (2 *Cir.* 1928) :

"However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful."

This view was adopted in 3 *Restatement of Torts* (1938), § 730. It is well supported here and elsewhere. See 51 *West 51st St. Corp. v. Roland,* 139 *N. J. Eq.* 156 (*Ch.* 1946); *Goldscheider v. Schnitzer,* 3 *N. J. Super.* 425 (*Ch. Div.* 1949); *American Shops, Inc. v. American Fashion Shops of Journal Square, Inc.,* 13 *N. J. Super.* 416 (*App. Div.* 1951), certification denied, 7 *N. J.* 576 (1951); *Annotation,*

148 *A. L. R.* 12, 22 (1944). The present-day approach may be said to have been anticipated in *Edison Storage Battery Co. v. Edison Automobile Co.*, 67 *N. J. Eq.* 44 (*Ch.* 1904) and *Cape May Yacht Club v. Cape May Yacht and Country Club*, 81 *N. J. Eq.* 454, 456 (*Ch.* 1913).

Thus, injunctive relief has been granted upon proof of likelihood of confusion as to source or sponsorship despite the diverse nature of the products or services involved. See *Safeway Stores, Inc. v. Rudner*, 246 *F.* 2d 826 (9 *Cir.* 1957); *Sears, Roebuck and Co. v. Johnson*, 219 *F.* 2d 590 (3 *Cir.* 1955); *Yale Electric Corporation v. Robertson, supra* (26 *F.* 2d 972); *Safeway Stores, Inc. v. Safeway Const. Co., Inc.*, 74 *F. Supp.* 455 (*D. C. S. D. Cal.* 1947); *Great Atlantic & Pacific Tea Co. v. A & P Radio Stores*, 20 *F. Supp.* 703 (*D. C. E. D. Pa.* 1937); *Great Atlantic & Pacific Tea Co. v. A & P Cleaners & Dyers, Inc.*, 10 *F. Supp.* 450 (*D. C. W. D. Pa.* 1934); *Sullivan v. Ed Sullivan Radio & T. V., Inc.*, 1 *App. Div.* 2d 609, 152 *N. Y. S.* 2d 227 (*1st Dept.* 1956); *Annotation*, 148 *A. L. R.* 12, 53, 68, 81 (1944).

Both the trial court and the Appellate Division approached the case upon the basis of the views expressed above, but found neither confusion nor a likelihood of confusion. We cannot agree. The record requires a finding that confusion is probable; in fact, it has occurred and been revealed both to plaintiff and defendant. The sporadic nature of the incidents, some 11 in number, is not significant. In the nature of the subject, the extent of actual confusion is difficult to demonstrate. Here the established events serve to evidence the types of public misunderstanding which we would find to be likely even in the absence of the specific proof. We have no doubt that the average member of the public accepts "A & P" as indicative of sponsorship by plaintiff and will attribute to plaintiff his reaction to defendant's truck operations and as well such governmental difficulties as defendant may experience in its highly regulated field. The question is not whether defendant's activities will redound to plaintiff's gain or injury; the point is that plaintiff, under the

facts of this case, should not be required to leave its reputation in the hands of defendant. 3 *Restatement of Torts* (1938), § 730, *p. 599, comment (b)*.

Indeed, the judgment granted by the trial court and modified by the Appellate Division seems necessarily to imply a likelihood of confusion, either present or future, since otherwise there would be no reason for the direction that defendant change its "letterheads, envelopes and other media, so that the letters 'a & p' would not appear thereon in small-case type and separated by a space from and colored differently than the words 'Trucking Corporation,' " and that defendant discontinue using "A & P" unless "accompanied with the words 'Trucking Corp.' or 'Trucking Corporation,' in equal size and style of lettering." (51 *N. J. Super.,* at *page* 425). We are satisfied the relief thus granted will not dispel the likelihood of continued confusion.

 Defendants stress the finding of good faith made in their favor. It is usually said that the consequences of an unfair trade practice rather than the motive will determine whether a court should act and hence the absence of an intent to injure the plaintiff or to deceive the public is immaterial. *Polackoff v. Sunkin,* 115 *N. J. Eq.* 134, 138 (*E. & A.* 1934) ; *American Shops, Inc. v. American Fashion Shops of Journal Square, Inc., supra* (13 *N. J. Super.,* at *page* 425) ; *Weiss v. Stork and Gift Shop,* 137 *N. J. Eq.* 475, 481 (*Ch.* 1946) ; *Cape May Yacht Club v. Cape May Yacht and Country Club, supra* (81 *N. J. Eq.,* at *page* 458) ; 3 *Restatement of Torts* (1938), § 717. It is doubtless true that no pat formula may safely be fashioned for all cases, especially in view of the expansion of the doctrine into new areas of unfair conduct in which many considerations are implicated. The safer view is suggested in *Dwinell-Wright Co. v. White House Milk Co., Inc.,* 132 *F. 2d* 822, 825 (2 *Cir.* 1943), that "equity does not seek for general principles, but weighs the opposed interests in the scales of conscience and fair dealing." We need not consider in academic style whether good faith would be a makeweight in the appraisal of plaintiff's main case or of the defense of laches,

see 3 *Restatement of Torts* (1938), § 717, *comment (a)*, at *p.* 566, for the reason that we find there was a conscious appropriation of plaintiff's symbol.

The finding below was that the individual defendants purchased the shares of stock of defendant corporation in good faith. The precise dimensions of the finding are not clear. If the meaning is that there was no purpose to take business from plaintiff, it obviously is correct; and so also if it means that the individual defendants had an economic motive in shifting from a partnership to a corporate form. But if the finding means that defendants selected the symbol with perfect innocence, we cannot agree. We believe it inescapable that both the original incorporators and the individual defendants who acquired ownership of the stock were fully aware that "A & P" connoted the plaintiff in virtually every household, and intended to profit from the public's familiarity with it and the esteem which plaintiff had attached to the symbol by the merit of its operations and tremendous sums invested in publicizing it.

One of the Imperatores, while disclaiming an awareness of possible confusion, acknowledged that as a boy he knew that "A & P" meant the plaintiff. When the Imperatores acquired the stock, the company was a failing operation with an insignificant amount of business. Plaintiff had already protested the use of the symbol and was assured by the then attorney for defendant company but a few months before the stock was sold that it was about to cease operations. The company was thus alerted as to plaintiff's position, and although no affirmative proof exists that the Imperatores knew of the correspondence, yet it seems evident that they were more attracted by the name than by the corporate assets. And that defendants understood the value of the symbol is evidenced by the prominence which defendants gave to that portion of the corporate name and which underlies the specific relief granted below.

The findings which we deem to require the full relief stated hereinafter are these: (1) the symbol "A & P" is arbitrary and distinctive rather than merely descriptive;

(2) it is a household term, clearly identified with plaintiff alone; (3) defendants selected and used "A & P" with the intention of securing for themselves the value of a highly advertised symbol; (4) notwithstanding the absence of direct competition, present or prospective, there is a reasonable likelihood of public confusion as to the sponsorship by plaintiff of defendant's operation; (5) it would be unreasonable to permit defendant to continue to have the capacity to jeopardize the reputation of plaintiff.

We agree with the trial court and Appellate Division that plaintiff is not debarred from relief by reason of delay in institution of this action. Plaintiff acted promptly in 1947 and was assured the business would cease. Defendant's operation ultimately became sizable. The record does indicate a number of contacts between employees of defendant and employees in the lower echelon of plaintiff's business, but there is no evidence of procrastination at a policy-making level. In any event, the corporate defendant knew of plaintiff's objection and continued to exploit the symbol with the purpose we have found. The increase since 1947 in defendant's business of course makes ·the result more expensive for it, but that very increase also enlarges the amount of confusion and the hazard to plaintiff. It is appropriate to repeat from *Yale Electric Corporation v. Robertson, supra* (26 *F. 2d,* at *page* 974):

> "The plaintiff has gone on in the face of the defendant's opposition from the very outset. If its persistence now lays a heavy burden on it, it is of its own making. It would be an easy escape from the consequences of a wrong to assert that one has grown so old in its practice as to make any change painful."

Plaintiff is entitled to a judgment directing defendant to discontinue and desist from the use of the letters "A" and "P" in that order whether conjoined by "and" or an ampersand, both in its operations and in its corporate name. In the light of the nature of the area of likely confusion and to the end that defendant may not be unnecessarily deprived of its own goodwill, it may be permitted for a

period of one year to indicate in its correspondence and in established trade media that it was formerly known as A & P Trucking Corporation, provided there is immediately added with equal prominence the statement that it is not connected with plaintiff in any way.

The judgment of the Appellate Division is accordingly modified and the cause remanded to the Chancery Division with directions to enter final judgment in harmony with this opinion.

*For modification and remandment*—Chief Justice WEIN-TRAUB, and Justices HEHER, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*Opposed*—None.