TISCH HOTELS, INC., Americana Hotel Operating Corporation, Plaintiffs-Appellants,

v.

AMERICANA INN, INC., Americana Motor Courts, Inc., Americana Catering Company, Defendants-Appellees.

No. 14817.

United States Court of Appeals Seventh Circuit.

Aug. 5, 1965.

Rehearing Denied Sept. 14, 1965.

# 610

Robert S. Hunt, Schiff, Hardin, Waite, Dorschel & Britton, Chicago, Ill., Jay H. Topkis, Neale M. Albert, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for appellants.

Benjamin M. Becker, Bernard Savin, Ronald N. Mora, Becker & Savin, Chicago, Ill., for appellees.

Before HASTINGS, Chief Judge, and CASTLE and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This appeal presents the question whether plaintiffs are entitled to injunctive relief based on alleged trademark infringement and unfair competition by reason of defendants' adoption and use, without consent, of plaintiffs' registered service mark "Americana". The district court's findings and judgment were against plaintiffs. We reverse.

Plaintiffs own and operate a number of hotels, three of them bearing the name "Americana". They began construction of the Miami Beach, Florida Americana in May 1955 and opened that hotel in December 1956. The Americana of New York opened in September 1962 and the Americana of San Juan, Puerto Rico began operations in November 1962. These are large luxury hotels in the highest price class, catering chiefly to the resort and large convention trade. Defendants own and operate two motels in the Chicago area. Their Americana Motel opened in March 1957 and their Americana Inn opened in April 1961. These motels cater chiefly to businessmen and to families, at moderate rates, and have facilities for sales meetings and small conventions.

Late in 1960 plaintiffs learned of defendants' use of the word "Americana" in connection with hotel services. In February 1961 plaintiffs applied to the Patent Office for registration of Service Mark No. 177,926, consisting of the word "americana", in lower case type, superimposed on a hemispheric background of North and South America. Registration on the Principal Register was granted on September 11, 1962. In August 1961 plaintiffs wrote to defendants complaining of the latter's infringement of the trademark "Americana" and demanded cessation of its use. Defendants rejected this demand.

On September 7, 1962 plaintiffs applied for registration of Service Mark No. 152,729, consisting of the word "Americana" in connection with hotel, restaurant, banquet and catering services. De-

fendant rejected a second demand by plaintiffs in January 1963 that they cease use of the name, and plaintiffs filed this suit in March 1963. Registration on the Principal Register of the service mark "Americana" was granted on September 17, 1963 and plaintiffs subsequently amended their complaint to add a claim of infringement of this mark. There were no prior registrations of the name in connection with hotel services and no evidence of any such use of the name prior to plaintiffs' adoption of the name.

The district court dismissed the suit upon the merits after finding that plaintiffs' mark was "weak" and entitled only to narrow protection; that plaintiffs had not proved secondary meaning in the name "Americana"; that there was "negligible" evidence of actual or probable confusion; and that plaintiffs had unduly delayed filing suit after being put on notice of defendants' use of their mark. The court concluded ultimately that there was no infringement and that plaintiffs were guilty of laches precluding them from equitable relief.[1] We think that certain of the findings are clearly erroneous and that the conclusions are erroneous.

■ The court erred in concluding that "since 'Americana' is a widely used

common word, rather than a coined or fanciful name, it is a weak trademark and is only entitled to narrow, restricted protection".[2] The word "Americana", as applied to hotel and related services, is, in our opinion, an arbitrary mark, since it in no way suggests or describes hotel services, and it cannot be said that it is weak and entitled to little protection. Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629 (1916); Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 153–154 (9th Cir.), cert. denied 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963); National Lead Co. v. Wolfe, 223 F.2d 195 (9th Cir.), cert. denied 350 U.S. 883, 76 S.Ct. 135, 100 L.Ed. 778 (1955).

■ Under the Lanham Trade-Mark Act[3] the test of infringement is likelihood of confusion. 15 U.S.C. § 1114(1); G. D. Searle & Co. v. Chas. Pfizer & Co., 265 F.2d 385, 388 (7th Cir.), cert. denied 361 U.S. 819, 80 S.Ct. 64, 4 L.Ed.2d 65 (1959). The test of actual confusion, followed by this court in Rytex Co. v. Ryan, 126 F.2d 952 (7th Cir. 1942), is no longer the law. Barbasol Co. v. Jacobs, 160 F.2d 336 (7th Cir. 1947).[4] Likelihood of confusion can be proved without any evidence of actual confusion, Keller Prod-

1. Plaintiffs abandoned their demand for an accounting and damages.

2. Trademarks may be placed into four categories according to strength and the corresponding amount of protection which will be accorded them. Trademarks can be (1) descriptive or generic, i. e., the mark describes the product or service itself; (2) suggestive, i. e., the mark describes or suggests a characteristic of the product or service; (3) arbitrary, i. e., the mark is a word in common use, but applied to a product or service unrelated to its meaning, so that the word neither describes nor suggests the product or service; and (4) coined, i. e., the mark is a word devised or invented for the purpose of identifying the product or service.

3. 15 U.S.C. § 1051 et seq.

4. Plaintiffs introduced evidence of payment for services in connection with a

sales meeting held at defendants' motel being erroneously sent to plaintiffs' Miami Beach hotel, and of several instances of customer confusion reported by plaintiffs' employees. The district court's conclusions on "evidence of confusion" indicate at least an erroneous emphasis on proof of actual confusion:

"11. Evidence of trivial confusion does not support a claim of unfair competition or trademark infringement. Plaintiffs cannot prevail in an action for trademark infringement or unfair competition unless they prove probable confusion or actual confusion between marks of Plaintiffs and Defendants.

"12. Plaintiffs' evidence of probable or actual confusion between the operations of Plaintiffs and of Defendants, was negligible. A single, isolated instance of error in mailing, out of hundreds of thousands of annual transactions over a period of years, does not establish probable or actual confusion."

ucts, Inc. v. Rubber Linings Corp., 213 F.2d 382, 386, 47 A.L.R.2d 1108 (7th Cir. 1954); Independent Nail & Packing Co. v. Stronghold Screw Products, Inc., 205 F.2d 921, 925 (7th Cir.), cert. denied 346 U.S. 886, 74 S.Ct. 138, 98 L.Ed. 391 (1953), and since reliable evidence of actual confusion is difficult to obtain in trademark and unfair competition cases, any such evidence is substantial evidence of likelihood of confusion. Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755, 761 (2d Cir. 1960).

■ We are to determine, as was the district judge, from the evidence in this record, which was uncontroverted, the "purchaser's [patron's] state of mind when confronted" by plaintiffs' registered mark and defendants' mark, whether likelihood of confusion exists. G. D. Searle & Co. v. Chas. Pfizer & Co., 265 F.2d at 388; National Van Lines, Inc. v. Dean, 288 F.2d 5, 9 (7th Cir. 1951); Colburn v. Puritan Mills, Inc., 108 F.2d 377, 378 (7th Cir. 1939); Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d at 757.

■ Plaintiffs do not contend that they and defendants are in direct competition or that there is a likelihood that a traveler will become confused and register at defendants' motel in Chicago thinking it is the Miami Beach Americana. Their position is that a prospective patron seeing the "americana" mark on defendants' motel would be likely to confuse it with the same mark used by plaintiffs, and that, being confused as to the source of the services, if the patron is dissatisfied with defendants' services, plaintiffs would suffer, since their "reputation is no longer within [their] own control and there is an injury, unless there is a clear distinction between the

marks." Yale Electric Corp. v. Robertson, 26 F.2d 972, 973 (2d Cir. 1928). As the Ninth Circuit, in Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d at 159, said as to infringement, "The question is, are the uses related so that they are likely to be connected in the mind of a prospective purchaser." We conclude, "as our reactions persuade us," Colburn v. Puritan Mills, Inc., 108 F.2d at 378, that there was, and is, this likelihood.

After adopting the name in 1955, plaintiffs spent about $500,000 in a preopening promotion for their Miami Beach hotel in order to identify the mark in the public mind with luxurious hotel service. They sent out 50,000 21-page brochures to travel agents and prospective patrons and advertised and received free publicity throughout the country. Much of this activity was carried on in Chicago, which is one of plaintiffs' largest markets.[5] During the opening week at the Miami Beach Americana in December 1956 the hotel was host for the convention of the National Broadcasting Company, and a number of network television shows, including the Perry Como and Steve Allen "Tonight" shows, were televised from the hotel, all prominently featuring the hotel and pictures of its distinctive sign. In all of this promotion, publicity and advertising, the name "americana" was used, in lower case letters, with a five-point star over the "i" and usually with a white line running through the first "a". There is no evidence that anyone else had ever given these distinctive notes to the common word.

Three months after the opening of the Miami Beach Americana defendants adopted the name "Americana" and have used it in the identical style employed

5. Advertisements were placed in two Chicago newspapers, as well as in national magazines. Plaintiffs annually spend on advertising in the Chicago area $15,000 for the Miami Beach Americana, $40,000 to $50,000 for the New York Americana, and $10,000 for the San Juan Americana. Chicago is the largest market for the New York hotel and the second largest market for the Miami Beach and San Juan Hotels.

extensively by plaintiffs, as the following illustration shows.

*Plaintiffs'*
*Service Mark*

*Defendants'*
*Service Mark*

Defendants knew of plaintiffs' use of the name, at the time they selected it through trade papers, advertising, and from one of their officer's personal observation of the Miami Beach hotel, which, the evidence shows, prominently displayed the name "Americana" in the distinctive form shown above. Defendants' officers rejected their sign designer's suggested simple "dot" over the "i" in their motel sign and had him substitute for it a five-point star. They testified that this was merely to permit the use of a particular type of flashing light in the sign and that the signmaker independently created the design which was accepted. Defendants introduced expert testimony that the plaintiffs' use of lower case letters, stars over "i's" and lines through letters are common advertising devices, and an exhibit prepared by the expert, consisting of advertisements employing some of these devices; but there are in the exhibit no examples of the distinct form of lower case "a" used by plaintiffs and defendants and none showing a white line through the center of any letters. We find incredible the suggestion that the identity between plaintiffs' and defendants' designs and use of the word "americana" was arrived at independently or by coincidence. Cf. Thompson v. Alpine Motor Lodge, Inc., 296 F.2d 497 (5th Cir. 1961); Travelodge Corp. v. Siragusa, 228 F.Supp. 238 (N.D. Ala. 1964).

The district court found as a fact and concluded that defendants acted in good faith in adopting the name "Americana", "without intending to exploit the reputation or good will of Plaintiffs * * *." A finding of fraudulent intent or bad faith is not essential to the award of an injunction for trademark infringement where likelihood of confusion exists. Cf. Metropolitan Life Ins. Co. v. Metropolitan Ins. Co., 277 F.2d 896, 900 (7th Cir. 1960); J. S. Tyree, Chemist, Inc. v. Thymo Borine Laboratory, 151 F.2d 621, 623 (7th Cir. 1945). But we think that defendants adopted plaintiffs' name deliberately with a view to obtaining some advantage from plaintiffs' investments in promotion and advertising. The inference of likelihood of confusion is therefore readily drawn because the adoption itself indicates that defendants expected that likelihood to their profit. Northam Warren Corp. v. Universal Cosmetic Co., 18 F.2d 774 (7th Cir. 1927); Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d at 158. A comparison of plaintiffs' and defendants' marks shown above clearly discloses the copying. Defendants knew of plaintiffs' mark and should have taken reasonable precautions to avoid the likelihood of confusion. G. D. Searle & Co. v. Chas. Pfizer & Co., 265 F.2d at 387; Jewel Tea Co. v. Kraus, 187 F.2d 278, 283 (7th Cir. 1950).

The fact that neither geographically nor in size or cost of service are the parties directly in competition does not preclude the relief sought here. Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495 (2nd Cir. 1962); Esquire, Inc. v. Esquire Slipper Mfg. Co., 243 F.2d 540, 542 (1st Cir. 1957). By the very nature of their business defendants are seeking to attract the traveling public, and despite their present protestations of modest size, price and services, defendants have held their motels out to the traveling public as "nationally famous", and the "ultimate in comfort and good taste", with "unmatched service to traveling and industrial america." In another advertisement they state "in Chicago travelers always stop when they

see the name americana", and travelers are invited to "make your stay at Americana a real vacation". Defendants also maintained at O'Hare International Airport direct telephone lines to their motels along with a sign bearing the name "americana" in plaintiffs' distinctive typeface.

Defendants argue that "only an exceedingly simple traveler" would be so confused as to associate defendants' motels with plaintiffs' hotels. A similar claim was made in Stork Restaurant, Inc. v. Sahati, 166 F.2d 348, 359 (9th Cir. 1948), where the Ninth Circuit Court of Appeals reversed a judgment against the plaintiff, owner of the New York Stork Club, in its suit for infringement of its name. The defendant there urged that passersby would hardly assume that an unpretentious nightclub in San Francisco called the Stork Club was associated with the New York establishment. As the court there said, the law protects the "ignorant, the inexperienced, and the gullible" as well as the worldly wise, the intelligent and the astute. Besides, we think that sophisticated travelers could easily be misled when confronted with defendants' advertising and its airport sign and telephone.[6]

■ The fact that the word "americana" is used in connection with numerous other businesses, enterprises and products is irrelevant. Uses of the name outside the hotel field could not possibly cause confusion with plaintiffs' mark. Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d at 154. Equally irrelevant to the question of plaintiffs' right to relief against defendant is whether other hotels or motels are also infringing the plaintiffs' name. Metropolitan Life Ins. Co. v. Metropolitan Ins. Co., 277 F.2d 896, 900 (7th Cir. 1960).

■ Because of our conclusion that plaintiffs' mark is not descriptive and that there is likelihood of confusion in this case, we need not consider whether plaintiffs' mark has acquired secondary meaning. Watkins Products, Inc. v. Sunway Fruit Products, Inc., 311 F.2d 496, 499 (7th Cir.), cert. denied 373 U.S. 904, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963).

■ The district court concluded that plaintiffs failed to make reasonable inquiry into the use of their name by others, that the delay of eighteen months in filing suit after defendants' rejection of their demand to cease using the name constitutes laches, and that defendants' good faith adoption and promotion of the name since March 1957 in the case of one defendant and since April 1961 in the case of the other defendant allows defendants to rely on the defense of estoppel, since it would be inequitable now to require defendants to cease using the name. A review of numerous cases in

---

6. Federal court cases, whether based on trademark infringement, unfair competition, or state anti-dilution statutes, and involving hotels, motels or restaurants with the same or similar names have been practically unanimous in awarding injunctive relief to the prior user of the name who has established a national or widespread reputation for the name, even though the establishments are separated geographically and not in competition. Thompson v. Alpine Motor Lodge, Inc., 296 F.2d 497 (5th Cir. 1961), 324 F.2d 374 (5th Cir. 1963); Lincoln Restaurant Corp. v. Wolfies Rest., Inc., 291 F.2d 302 (2d Cir.), cert. denied 368 U.S. 889, 82 S.Ct. 143, 7 L.Ed.2d 88 (1961); Ambassador East, Inc. v. Orsatti, Inc., 257 F.2d 79 (3rd Cir. 1958); Pike v. Ruby Foo's Den, Inc., 98 U.S.App. D.C. 126, 232 F.2d 683 (1956); Stork Restaurant, Inc. v. Sahati, 166 F.2d 348 (9th Cir. 1948); White Tower System, Inc. v. White Castle System, 90 F.2d 67 (6th Cir. 1937); Travelodge Corp. v. Siragusa, 228 F.Supp. 238 (N.D.Ala. 1964); HMH Publishing Co. v. Turner, 222 F.Supp. 145 (N.D.Ga.1963); Nagrom Corp. v. Cock 'N Bull, Inc., 149 F.Supp. 217 (D.D.C.1957); Ambassador East, Inc. v. Shelton Corners, Inc., 120 F.Supp. 551 (S.D.N.Y.1954); Brass Rail, Inc. v. Ye Brass Rail of Massachusetts, Inc., 43 F.Supp. 671 (D.Mass.1938); Stork Restaurant, Inc. v. Marcus, 36 F.Supp. 90 (E.D.Pa.1941); contra, El Chico, Inc. v. El Chico Cafe, 214 F.2d 721 (5th Cir. 1954); New Yorker Hotel Corp. v. Pusateri, 87 F.Supp. 294 (W.D.Mo.1949).

this area reveals, however, that only in the most exceptional circumstances will injunctive relief be denied in a case of deliberate infringement. We think it would be inequitable to permit defendants to continue the injury to plaintiffs because of plaintiffs' delay, from late in 1960, when they learned of the infringement, to August 1961, in making their demand to cease on defendants, and because they delayed filing suit until March 1963.

Mere delay is not sufficient to warrant barring plaintiffs' suit. In Standard Oil of Colorado v. Standard Oil Co., 72 F.2d 524, 527 (10th Cir. 1934) the court stated that "mere delay is insufficient; it must result in prejudice to the party asserting laches." If this prejudice could consist merely of expenditures in promoting the infringed name, then relief would have to be denied in practically every case of delay. It is only, however, where the delay is so prolonged and inexcusable that it amounts to a virtual abandonment of the right by the plaintiff for a long period of time that the balance of the equities would favor the knowing infringer. Borg-Warner Corp. v. York-Shipley, Inc., 293 F.2d 88, 94 (7th Cir.), cert. denied 368 U.S. 939, 82 S.Ct. 381, 7 L.Ed.2d 338 (1961); Seven-Up Co. v. O-So-Grape Co., 283 F.2d 103 (7th Cir. 1960), cert. denied 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961); Independent Nail & Packing Co. v. Stronghold Screw Products, Inc., 205 F.2d at 927; Stork Restaurant, Inc. v. Schati, 166 F.2d 348, 363 (9th Cir. 1948); Fruit Industries, Ltd., v. Bisceglia Bros. Corp., 101 F.2d 752 (3rd Cir. 1939). It may be that in this case defendants thought they had the legal right to adopt and use plaintiffs' name. Even so, they acted at their peril in doing so, and further acted at their peril in continuing to use the name in the face of a demand to cease. Independent Nail & Packing Co. v. Stronghold Screw Products, Inc., supra.

Since the same relief asked for under Count I charging trademark infringement is also sought under Count II charging unfair competition and violation of the Illinois Anti-Dilution Act, Ill. Rev. Stat. ch. 140, § 22 (1963), we need not discuss Count II.

For the reasons given, the judgment is reversed and the cause remanded with instructions to enter an injunction in accordance with the views expressed herein.