CAESARS WORLD, INC., a Florida Corporation, and Desert Palace Inc., a Nevada Corporation, Plaintiffs,

v.

CAESAR'S PALACE, a New Jersey Corporation d/b/a Caesars Palace Coiffures, Defendants.

Civ. A. No. 77–1191.

United States District Court, D. New Jersey.

April 30, 1980.

As Amended May 21, 1980.

---

820

James W. Clement, Charles W. Ryan, Clement & Ryan, Chicago, Ill., for plaintiffs.

Furman L. Templeton, Jr., Richard A. Rafanello, East Orange, N. J., for defendants.

## OPINION

WHIPPLE, Senior District Judge.

This case was tried before the Court without a jury. After careful consideration

of all credible testimony, the exhibits admitted into evidence, oral arguments, and post-trial submissions; the Court hereby makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ. 52.

The plaintiffs, Caesars World, Inc. and its wholly owned subsidiary Desert Palace Inc. exist under the laws of Florida and Nevada respectively. The defendant, Caesar's Palace, Inc. exists under the laws of New Jersey. This is an action brought by the plaintiffs for service mark infringement, unfair competition, and service mark dilution. They seek injunctive relief, attorney's fees and costs. However, all claims for damages or an equitable accounting have been waived.

In about January 1965 Desert Palace Inc. hired Seymour Goeld to plan and carry out promotion and advertising activities for a proposed resort hotel. The name "Caesars Palace" was originated and adopted by the plaintiffs to be used as the name for the resort. Seymour Goeld invented a distinctive lettering style to be used in connection with the promotion and advertising. The distinctive characteristic of this style, called "romanesque" at trial, consists of angled type termination for the unattached ends of the letters "C", "A", and "S". The letters "E", "R", and "P" have a distinctive curvature in their design. (Pl. Ex. 14g–1—14g–4). The romanesque lettering style has been used by the plaintiffs in printing "Caesar's Palace" since before the resort opened.

On August 6, 1966 Desert Palace, Inc. began operation of Caesars Palace Resort Hotel in Las Vegas, Nevada. The name Caesar's Palace and the name as printed in romanesque lettering has been used by plaintiffs in advertising and promotion from at least that time until the present. Their advertising and promotion has been extensive. It has cost several million dollars. Ads have appeared in national magazines. Promotional activities have included television specials and sporting events broadcast nationally. Promotional products such as playing cards, glassware, and key-

rings have been widely distributed. Samples of the items were admitted into evidence. The name and service marks contribute to the goodwill of the business through these activities.

Caesars Palace Resort Hotel provides room accommodations, banquet and meeting rooms, a casino, bars, restaurants, and very well-known nightclub entertainment. Also included are swimming pools, gift and clothing shops, health facilities, a barber shop, and a beauty salon. Of particular relevance here is the beauty salon which uses the name Caesar's Palace and the romanesque lettering style to print the name. All of the resort services are mentioned in advertising brochures which are distributed nationally. The resort has had guests from throughout the country including the New York City and New Jersey area.

The defendant Caesar's Palace, Inc. was incorporated on June 5, 1968. The president is Caesar Crimi. The sole stockholders are Mr. Crimi and his wife Frances Crimi. In 1967 Mr. Crimi worked in a beauty salon owned by another individual. Upon the recommendation of a customer, Mr. and Mrs. Crimi visited Las Vegas in October 1967 and stayed at Caesars Palace Resort Hotel. They both saw the plaintiffs' trade name and service marks. Less than nine months after returning to New Jersey they incorporated the defendant "Caesar's Palace" and opened a beauty salon on June 8, 1968. Shortly thereafter, Mr. Crimi erected or caused to be erected a sign, printed in the identical romanesque lettering style used by plaintiffs, which reads "Caesar's Palace". When he moved to his second shop, he took the sign and had it installed over the front door. Caesar's Palace Inc. presently does business at the second shop under the name Caesar's Palace Coiffures.

Caesar's Palace Coiffures is a small beauty shop in South Orange, New Jersey. Caesar Crimi is a licensed beautician who works in the shop himself. Over the years he has done very little advertising. The shop is listed in the local phone directory as Caesar's Palace. Mr. Crimi has not engaged in other business besides hairstyling. His cus-

tomers are predominantly women from South Orange.

When the plaintiffs attempted to reserve a corporate name with the New Jersey Secretary of State in May 1977, they first learned of the defendant's existence. On June 3, 1977 they mailed a cease and desist letter to the defendant. When defendant refused to comply, this action was instituted on June 17, 1977. It should be noted that the plaintiffs have been involved in several lawsuits where others have been enjoined from using the plaintiffs' name and service marks. *Caesars World, Inc. v. Caesar's Palace Inc.*, 179 U.S.P.Q. 14 (D.Neb.1973); *see* Appendix A, *infra.*

Jurisdiction is properly before this Court based upon the complete diversity of citizenship between the parties. 28 U.S.C. § 1332. The parties have stipulated that the goodwill of the plaintiffs is valued in excess of $10,000.00. Additionally it has been stipulated that Caesars World, Inc. is the owner of the trade name and service marks used by Desert Palace, Inc. including the name and mark "Caesars Palace".

 The law provides protection to those who have acquired common law and statutory rights[1] in a trade name and service mark. A trade name is the name or title lawfully adopted and used by a particular organization engaged in commerce. It can be used in advertising, promotion and to generate publicity for the business. A service mark can be a word, name, symbol, device or any combination thereof adopted and used in the sale or advertising of services to identify the service of the entity and distinguish them from the services of others. 15 U.S.C. § 1127. The only difference between a trademark and a service mark is that a trademark identifies goods while a service mark identifies services. Common law rights are acquired in a service mark by adopting and using the mark in connection with services rendered. *Hanover Star Milling Company v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916); *Caesars World Inc. v. Caesar's Palace Inc., supra.*

 The extent of the protection afforded initially depends upon the characteristics of the mark itself. A descriptive or common word or symbol usually has to acquire secondary meaning through use. However:

> Inherently distinctive marks, such as fanciful or arbitrary words and symbols, gain . . . protected status upon their first use on . . . services in the marketplace.

*Scott Paper Company v. Scott's Liquid Gold, Inc.*, 439 F.Supp. 1022, 1034 (D.Del. 1977), *rev'd* 589 F.2d 1225 (3d Cir. 1978). Inherently distinctive marks are also called technical marks. Common law rights in such marks exist independently of statutory provisions for registration.[2] *Caesars World Inc. v. Caesar's Palace, Inc., supra* at 16, *citing Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 333, 59 S.Ct. 191, 200, 83 L.Ed. 195 (1938). It is unnecessary for a plaintiff to prove that their mark has acquired secondary meaning in the minds of the public if their mark is arbitrary, fanciful, and non-descriptive.

 In the matter at bar the plaintiffs have shown their trade name and service mark to be unique. It was invented solely for use in connection with the resort hotel and contains a grammatical error, namely, the omission of a apostrophe indicating the possessive form of "Caesar". In *Caesars*

---

1. It was stipulated by the parties that Caesars World, Inc. has registered the service marks Caesars Palace and Caesars Palace written in the romanesque lettering style with the United States Patent and Trademark Office under U. S. Registration No. 907,693, issued February 9, 1971; No. 907,696, issued February 9, 1971; No. 963,820, issued July 10, 1973 and No. 1,004,058, issued February 4, 1975.

Since the matter herein is discussed and ruled upon under the common law, it is unnec-essary to consider plaintiffs' rights under 15 U.S.C. § 1051 et seq. (The Lanham Act). It is noted, however, that plaintiffs' common law rights are not affected by the fact that the service marks were registered after the defendant began its use of the name and marks. 4 Callman, *The Law of Unfair Competition Trademark and Monopolies*, § 97.3(a) (3d Ed. 1969), and cases cited therein.

2. *See* n.1, *supra.*

*World, Inc. v. Caesar's Palace, Inc., supra,* the identical trade name and service marks as used by these same plaintiffs was held to be arbitrary, unique, and non-descriptive. *Id.* at 16. The romanesque lettering style invented for the use of the plaintiffs is similarly unique. Thus the service mark consisting of "Caesars Palace" written in the romanesque lettering style is protectable because the marks are unique, arbitrary, and non-descriptive. It is unnecessary for the plaintiffs to prove that the service marks have acquired secondary meaning in the mind of the public.

In *Caesars World, Inc. v. Caesar's Palace, Inc., supra,* it was held that Caesars World, Inc.:

> (a)s the first to appropriate and use the marks in connection with the particular business . . . gained an exclusive right to use them. *Canal Company v. Clark,* 80 U.S. 311 [20 L.Ed. 581] (1871). 179 U.S.P.Q. at 16.

The same entity now asserts rights as against a different defendant. In the earlier, Nebraska case, the defendant operated a cocktail lounge; here the defendant operates a beauty parlor. Other differences between the cases[3] require an independent analysis of the matter herein. As was prudently stated by the Ninth Circuit:

> Each case of trademark [and service mark] infringement must be analyzed based on its own facts. The results reached in different cases . . . only appear contradictory when the particular facts of each case are not analyzed.

*J. B. Williams Inc. v. Le Conté Cosmetics,* 523 F.2d 187, 191 (9th Cir. 1975). *Compare Scott Paper Company v. Scott's Liquid Gold, Inc., supra* where the district court granted relief, 439 F.Supp. 1022, only to be reversed by the circuit court, 589 F.2d 1225 (3d Cir. 1978).

 Rights to a trade name and service mark under common law include the right to prevent the subsequent use by another person of the same or similar name or mark, when the business or service for which the name or mark is subsequently used, is likely to cause confusion as to the origin of the business or the services. *Big O Tire Dealers v. Goodyear Tire and Rubber Co.,* 408 F.Supp. 1219, (D.Colo.1976), *aff'd,* 561 F.2d 1365 (10th Cir. 1977). Service mark infringement occurs when another person's mark or one similar to it is used in such a way as to create a "likelihood of confusion." Actual confusion in the marketplace need not be shown, especially where the plaintiff does not seek damages or an equitable accounting. 3 R. Callman, *The Law of Unfair Competition Trademarks and Monopolies,* § 80.6 and cases cited therein at n.82 (3d Ed. 1969). Having established that the plaintiffs were the first user of a unique name and mark, the remaining issue to be determined is whether the defendant's use created a likelihood of confusion so as to entitle the plaintiffs to relief.

The standards to be applied in making this determination were recently stated by the Third Circuit in *Scott Paper Co. v. Scott's Liquid Gold, Inc., supra:*

> Likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark. *See James Burrough Ltd. v. Sign of the Beefeater, Inc., supra,* [7 Cir.] 540 F.2d [266] at 275 . . . [There are many] factors to be considered in making this determination: (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether

---

**3.** The defendant in the Nebraska case in addition to using the name "Caesar's Palace", also used the roman cartoon figure which the plain- tiffs use as a logo in connection with another service mark.

the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of the public because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market.

589 F.2d at 1229 (citations omitted).

At the district court level in *Scott, supra* the first six factors were stated to be relevant in cases involving competing goods, while the last four factors were particularly relevant in non-competing goods cases. Even though Caesars Palace Resort Hotel has a beauty shop, it cannot be definitively stated that the parties compete until the relevant factors themselves have been discussed.

The degree of similarity between the name and marks in this case is obvious. The appearance, pronunciation, connotation and meaning of the expression "Caesars Palace" as used by the plaintiffs and defendant is identical. In its corporate name the defendant added the possessive apostrophe in Caesar's, yet not in the sign outside the shop.[4] Plaintiffs' trade name and service mark when printed in the romanesque style appears as follows:

**CAESARS PALACE**

The main sign over the door of defendant's beauty parlor appears as follows:

**CAESARS PALACE**

■ The courts view with suspicion a name or mark which is so close to that of another that the public may fail to distinguish them. *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 613 (7th Cir. 1965); *Stork Restaurant, Inc. v. Sahati*, 166 F.2d 348, 361 (9th Cir. 1948); *McNeil Laboratories, Inc. v. American Home Products Corp.*, 416 F.Supp. 804 (D.N.J.1976). When

two marks are identical it may be concluded that the defendant adopted the plaintiffs' name and mark deliberately with hopes of gaining an economic advantage at the expense of the plaintiffs' promotion, advertising and goodwill. *Tisch Hotels, Inc. v. Americana, supra.* Defendants who assert that they independently arrived at the name and/or mark face a difficult task. *Id. See generally, e. g. R. H. Macy & Co. v. Macy's Drug Store*, 84 F.2d 387 (3d Cir. 1936). Some courts have held that the identity of the names themselves is evidence of a likelihood of confusion. *American Plan Corp. v. State Loan & Finance Corp.*, 365 F.2d 635, 639 (3d Cir.), *cert. denied*, 385 U.S. 1011, 87 S.Ct. 719, 17 L.Ed.2d 548 (1966). However, the discussion does not end there. Though defendant's main sign is printed in exactly the same romanesque lettering as that of the plaintiff, Mr. Crimi alleges that the signmaker designed the lettering. *See* discussion of plaintiff's "innocent adoption" defense *infra.* Moreover, defendant's corporate name contains the possessive apostrophe while plaintiffs' name and marks do not. Though this difference carried little, if any, weight in *Caesars World, Inc. v. Caesar's Palace, Inc., supra*, each infringement case must be decided on its own set of facts.

■ Important to the issue of confusion is the strength or weakness of the name and marks in question. A "strong" mark is entitled to more protection than a "weak" mark. A strong mark means that it is better known in the marketplace. The fact that plaintiffs have spent millions of dollars on advertising and promotion contributes to the strength of their name and marks. Since this promotion has been nationwide in periodicals and television, the name and mark Caesars Palace has become very strong. This is simply because they are well known as representing the plaintiffs' resort.

It is not completely clear, however, that the stronger a mark, the more there is a likelihood of confusion. The following anomaly appears in a leading treatise:

> the side entrance, defendant has a plainly printed sign.

---

4. Defendant also has a sign written in the romanesque lettering style in its parking lot. At

The weaker the mark, the greater the likelihood of confusion, but the relatively more limited the protection available; the stronger the mark, and, therefore, the less likelihood of confusion, the more solicitous is the court to accord it protection against similar marks.

3 Callman, *supra* § 82.1(i) at 758–59. When a mark becomes very strong, in one respect there is less likelihood of confusion, while a weak mark is easily confused. The question is approached differently when it appears the subsequent user is attempting to trade upon the goodwill of the earlier user. For example, a person is not likely to walk into a beauty shop in South Orange, New Jersey, and think they are in a resort hotel in Las Vegas, Nevada; however, it is possible that the person may think there is a connection between the two. In a 1948 lawsuit involving a well-known restaurant and a much smaller establishment, on opposite coasts, it was recognized that:

> In these days of chain restaurants, one would not have to be uncommonly naive to assume that even a 'humble' cafe . . [in] San Francisco, might be an unpretentious branch of a glittering New York night spot. A branch unit is usually less elaborate and impressive than the 'mother house' . . . mere geographical distance is not of itself sufficient to preclude the possibility that a given establishment is a branch of an enterprise having its principal place of business elsewhere.

*Stork Restaurant v. Sahati*, 166 F.2d 348, 358 (9th Cir. 1948). Since 1948 the concept of chain restaurants and branch units has increased dramatically. With corporate conglomerates diversifying into different product lines and services using the latest franchising techniques, the possibility of confusion as to source has increased for even the strongest marks. This possibility supports a finding of a likelihood of confusion even where a very strong mark is appropriated by a relatively "humble" establishment.

Though it is relevant that the defendant charges less for hairdressing services at its shop than do the plaintiffs, other factors besides the lack of a business connection could account for the disparity. These factors could include the economic differences between the particular geographic areas or a possible mass marketing promotion by plaintiffs. The care and attention exercised by consumers is a neutral factor because there is an overlapping of potential customers between these parties.

■ The most important factor under the circumstances of this case is the intent of the defendant in adopting its corporate name and using the romanesque lettering on its signs. In attempting to determine intent an important element is the defendant's awareness of the plaintiffs' trade name and service marks prior to its use. *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d at 613. Here it is admitted that the sole stockholders of the defendant visited the plaintiffs' resort hotel nine months before opening their beauty salon. Clearly, they were aware of plaintiffs' trade name and service marks, including the use on plaintiffs' beauty salon. Considered in this light defendant's "innocent adoption" defense must fail. Mr. and Mrs. Crimi had actual knowledge of the use by plaintiffs and the court so finds. When a later user asserts that a name or mark was innocently adopted, it is not necessary for the defendant to lack all knowledge of the prior use, *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber*, 408 F.Supp. 1219, 1239 (D.Colo. 1976), *aff'd*, 561 F.2d 1365 (10th Cir. 1977), although:

> . . . a second user is not in good faith if he selected the mark with the intent to misappropriate and benefit from the prior user's goodwill . . .
> *Id.*

In *Alfred Dunhill of London, Inc. v. Kasser Distillers Products, Inc.*, 350 F.Supp. 1341 (E.D.Pa.1972), *aff'd*, 480 F.2d 917 (3d Cir. 1973) the district court enjoined the defendants from using the name "Dunhill" for the sale of scotch whiskey where they were aware of the prior use of "Dunhill" for tobacco products, yet had innocently adopted the name for their product. Even where

a defendant adopts a name or mark without any intention of misleading the public, under certain circumstances the practice will be enjoined. *Id.*

On the issue of the romanesque lettering on the defendant's sign, the assertion that it was solely the doing of the signmaker is extremely doubtful. Even if the defendant had ordered a sign to reflect the corporate name "Caesar's Palace", this Court is asked to believe that the signmaker independently arrived at both the style of lettering and the lack of an apostrophe in the word Caesar. These contentions lack credibility. *See Tisch Hotels, Inc. v. Americana Inn, supra* at 613.

■ Defendant maintains that since the president of the corporation's name is Caesar Crimi, it should have the right to carry his name in what essentially is his place of business. The right to use one's own name is not absolute, even when used in good faith. *See Thaddeus Davids Co. v. Davids*, 233 U.S. 461, 471, 34 S.Ct. 648, 652, 58 L.Ed. 1046 (1914); *John B. Stetson Co. v. Stephen L. Stetson Co.*, 85 F.2d 586, 587 (2d Cir.), *cert. denied*, 299 U.S. 605, 57 S.Ct. 232, 81 L.Ed. 446 (1936). No person has the right to use his name in bad faith in order to unfairly compete with a prior user of the name. *John Walker & Sons, Ltd. v. Bethea*, 305 F.Supp. 1302, 1303–04 (D.S.C.1969); *Hertz Equipment Rental Corp., et al. v. Hertz Equipment International, Inc.*, 281 F.Supp. 1019, 1020 (S.D.Fla.1967); *Max Factor & Co. v. Factor*, 226 F.Supp. 120, 125 (S.D.Cal.1963); *Champion Spark Plug v. Champion*, 23 F.Supp. 638, 640–641 (E.D. Mich.1938). A person can even be precluded from using his entire name (as opposed to a part of it). *Thaddeus Davids Co. v. Davids, supra; John B. Stetson v. Stephen L. Stetson, supra; Dougherty's Sons, Inc. v. Dougherty*, 36 F.Supp. 149, 152 (E.D.Pa. 1940). Mr. Crimi's argument that he has the right to use his own first name fails if a prior user can successfully show a likelihood of confusion.

There is testimony from Mr. Crimi which suggests that his first shop was decorated in a gaudy style which resembled a type of place. However, unlike the first shop, the second shop was decorated by the Crimis. It is done in a much plainer style and does not resemble a palace. Even if the gaudy design and furnishings had been retained, this would not mean the defendant could continue to use the word "palace", if such use infringed upon the rights of the plaintiffs.

It has been held that "if the accused (infringer) believed he would benefit from the owner's good will this is strong evidence of a likelihood of confusion." *Scott Paper Company v. Scott's Liquid Gold, Inc., supra* 439 F.Supp. at 1036. Here the intent is clear, defendant wanted to avail itself of the plaintiffs' good will. The testimony to the contrary is simply not credible.

■ Caesar's Palace was incorporated by Mr. Crimi under the laws of New Jersey on June 5, 1968. At that time the plaintiffs had not attempted to register in New Jersey, and therefore their name and marks were not on record with the Secretary of State. The Corporation Act of New Jersey, N.J.S.A. 14A:1–1 et seq., does not require the Secretary of State to conduct a search of names or service marks before allowing an entity to incorporate. It is, however, specifically provided that:

> The filing in the office of the Secretary of State of the certificate of incorporation of a domestic corporation . . . shall not preclude an action . . . by any person adversely affected to enjoin . . . the use of the corporate name in violation of the rights of such person, whether on principles of unfair competition or otherwise.

N.J.S.A. 14A:2–2(5) (Supp.1979).

The defendant by being granted the right to incorporate under the name Caesar's Palace did not gain any greater rights as against these plaintiffs with respect to their name and service marks. *See* Gottlieb, "Corporate Name 'Clearance'—Potential Trademark Trouble Spot", 33 *The Business Lawyer*, 2263 (1978). Plaintiffs' rights in their name and marks are common law rights acquired initially by adoption, then by the continuous use which has made them strong marks.

Two other relevant factors in the determination of whether there is a likelihood of confusion are the length of time the defendant has used the mark without evidence of actual confusion and the evidence which indicates actual confusion. The parties have stipulated that the plaintiffs have never received telephone calls or letters intended for the defendant throughout the ten years defendant has been in business.

Plaintiffs have made a considerable effort to show evidence of actual confusion. Extensive surveys were formulated by experts and conducted in South Orange and Las Vegas. The results were interpreted by experts who testified at trial. The questionnaires themselves were admitted into evidence. (Pl.Ex. 11e–1, 2, 3, 4; 11f). Plaintiffs contend that the results of the surveys prove that some people have been actually confused. It should be noted that evidence of actual confusion is not necessary to support a finding of trade name or service mark infringement. 3 Callman, *supra*, § 80.6. Such evidence, however, can be very persuasive on the question of whether a likelihood of confusion exists. *John Wright Inc. v. Casper Corp.*, 419 F.Supp. 292, 319 n.11 (E.D.Pa.1976). Evidence of actual confusion does not always require a finding of a likelihood. For example, in *Scott Paper Products v. Scott's Liquid Gold, supra,* the Third Circuit found that instances of misdirected calls and letters between the parties were isolated occurrences which, given the magnitude of the two businesses, did not constitute a likelihood of confusion. Great weight has not been placed upon the results of the surveys because even if they did prove actual confusion, such evidence is unnecessary where other factors so strongly suggest the likelihood.

Lastly, in any analysis of whether there is a likelihood of confusion the extent of competition between the parties must be considered. The factors discussed above apply when the parties compete. Others become particularly relevant when the parties do not. Though both the plaintiffs and the defendant operate beauty salons, plaintiffs' is arguably an incidental service, while it is defendant's sole business. However, since plaintiffs have established that their hotel has had guests from throughout the country and particularly from the northern New Jersey area, the Court concludes that the sphere of the plaintiffs' market includes the smaller sphere of the defendant. For example, though the defendant draws customers from a limited geographic area, that area falls within the larger area of plaintiffs' advertising and promotion. This conclusion is supported by the frequent holdings that geographic distance between parties will not preclude a finding of infringement or unfair competition based upon a likelihood of confusion. *Ambassador East, Inc. v. Orsatti, Inc.,* 257 F.2d 79, 82 (3d Cir. 1958); *Stork Restaurant Inc. v. Sahati, supra,* 166 F.2d at 358; *Tisch Hotels, Inc. v. Americana Inn, Inc., supra,* 350 F.2d at 613.

Even to assume that plaintiffs and the defendant do not compete, trade name and service mark protection can extend beyond areas of direct competition. *Alfred Dunhill of London, Inc. v. Kasser Distillers Products, supra.* In infringement cases the extended protection is given to a mark which has become very strong, usually due to a substantial economic investment. This concept was recognized over fifty years ago by Judge Learned Hand who wrote:

. . . it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful. [citations omitted]

*Yale Electric Corporation v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928); *see, e. g., Ambassador East, Inc. v. Orsatti, supra; Alfred Dunhill of London, Inc. v. Kasser Distiller Products Co., supra.* Moreover, plaintiffs' theories of unfair competition and dilution do not depend upon viewing the parties as in direct competition. If so viewed, service mark infringement is based upon a likelihood of confusion. If the parties are not viewed as direct competitors, the actions of the defendant could still constitute unfair competition, arising out of the attempt to trade upon the goodwill of the plaintiffs.

Unfair competition is a common law concept broader in scope than service mark infringement, although the latter may constitute the former. Unfair competition can occur in many ways, one of which is the use of another's name or a similar name in such a way as is likely to mislead customers or potential customers. This is just another way of saying a likelihood of confusion. *Big O Tire Dealers v. Goodyear Tire & Rubber, supra.* Upon proof thereof, injunctive relief can be granted, even in the absence of direct competition. In *Great Atlantic & Pacific Tea Co. v. A & P Trucking Co.*, 29 N.J. 455, 149 A.2d 595 (1959) a trucking company was enjoined from using the name "A & P" on its trucks in an action brought by the better known supermarket company. A & P Trucking was not in the food business, yet the supermarket company did have trucks of its own. The New Jersey Supreme Court held that, "plaintiff . . . should not be required to leave its reputation in the hands of the defendant." *Id.* at 459–60, 149 A.2d at 597. Justice Weintraub wrote particularly appropriate language to the case at bar:

There being no competition, the question arises whether plaintiff may nonetheless be granted relief. Defendants do not seriously contend that today equity will act only when the litigants compete for the same customer. Early holdings to that effect, reflected for example in *National Grocery Co. v. National Stores*, 95 N.J.Eq. 588, 123 A. 740 (Ch. 1924), affirmed 97 N.J.Eq. 360, 127 A. 925 (E. & A.

1925), have yielded to a demand for a higher level of commercial morality and to the needs of a changing economy. Huge sums are expended in advertising both the product and the producer. Goodwill is a sensitive asset, particularly vulnerable today by reason of mobility of population and the media of mass communication. Industrial enterprises tend to diversify, entering fields alien to the area of initial success. Hence the consumer may more easily be misled by identical or simulated marks or names, notwithstanding differences in product, service or geographical area of operation. For this reason, the possessor of a valuable, well-regarded name may experience the illrepute of another who employs it, despite the absence of direct competition between them.

*Id.*, 29 N.J. at 457–58, 149 A.2d at 596–597.

The well-founded realities upon which the case was decided in 1959 carry even more weight today.

The doctrine of dilution is also closely related to infringement, and to unfair competition. It is the theory under which stronger marks and names are protected from the deterioration of their strength that would result through unauthorized use. The fear is that a weakening would occur if the initial user has no control over the type and quality of the goods or services offered. 3 Callman, *supra*, § 84.2; *see generally, Family Circle Inc. v. Family Circle Associates*, 332 F.2d 534, 540 (3d Cir. 1964). Although this is exactly the type of situation before the Court, since the doctrine of dilution has not been adopted by statute in New Jersey, nor is it generally permitted as the sole basis for relief in cases of this kind, 3 Callman, *supra* § 84.2, it will not be the basis for the relief granted herein. From a practical standpoint, it is dilution which the plaintiffs fear, and though there is a greater likelihood of dilution, than confusion; the concepts of service mark infringement and unfair competition are the vehicles through which the appropriate relief must be granted.

■ If a corporate name copies or is confusingly similar to another's name or mark, the use of the name may constitute unfair competition, service mark infringement, and dilution of the mark. *Independent Nail & Packing Co., Inc. v. Stronghold Screw Products, Inc.*, 215 F.2d 434 (7th Cir. 1954). If so found, the defendant can be enjoined from using the corporate name. *Caesars World, Inc. v. Caesar's Palace Inc., supra.*

Defendant assumed the risk that it might be infringing upon the name or service marks of the others when defendant willingly adopted the plaintiffs' trade name and service mark. *See Alfred Dunhill of London, Inc. v. Kasser Distiller Products Corp., supra* at 1368. Defendant has done very little advertising. It has not built up extensive goodwill for its beauty parlor, and has not shown that it will suffer hardship, nor lose business if the injunction is granted.

■ Based upon these factors and the appropriate case law the plaintiffs' request for injunctive relief is hereby granted to the extent that within thirty (30) days of entry of this opinion and accompanying order;

1) Defendant will cease doing business as "Caesar's Palace" by destroying all signs which bear that name and by changing all references to the establishment, be they in the telephone directory or otherwise;

2) Defendant will, through the New Jersey Secretary of State, change its corporate name from "Caesar's Palace," and

3) Defendant, in using a new trade name and corporate name, shall refrain from using the word "Palace"; however, the word "Caesar" may be used *only* if it is followed by the name "Crimi", and the word "Caesar" shall not be printed in the romanesque lettering style used by the plaintiffs. For example, the new name for defendant's shop could be Caesar Crimi's Coiffures, Caesar Crimi's Beauty Shop, etc.; but not Crimi's Palace, Caesar Crimi's Palace, nor Caesar's or Caesars.

Plaintiffs' application for attorney's fees and costs, being discretionary with the Court, are denied. However, if defendant fails in any respect to follow the terms of the injunctive relief granted, an application for costs of enforcement, including, but not limited to attorney's fees will be considered.

APPENDIX A

LIST OF DEFENDANTS WHO HAVE BEEN SUED BY CAESARS WORLD, INC. FOR INFRINGEMENT

| Business of Defendant | Location | Mark Infringed | Court | Civil Action No. |
|---|---|---|---|---|
| Apartment Rentals | Las Vegas, Nevada | CAESARS PALACE Romanesque Letters Design Mark | U.S.D.C., Nevada | LV–1694 |
| Amusement business operating games of chance | Seaside Heights, New Jersey | CAESARS PALACE | U.S.D.C., N.J. | 1531–73 |
| Restaurant services | New York, New York | CAESARS PALACE | U.S.D.C., S.D.N.Y. | 71 C 4333 |
| Nightclub | Cherry Hill, New Jersey | CAESARS PALACE Romanesque Letters Design Mark, Seal Design, CAESARS | U.S.D.C., N.J. | 1344–72 |
| Nightclub | St. Louis County, Mo. | CAESARS PALACE Romanesque Letters Design Mark | U.S.D.C., E.D.Mo. | 70 C 242(3) |
| Nightclub | Joplin, Missouri | CAESARS PALACE | U.S.D.C., W.D.Mo. | 2164 |

| Business of Defendant | Location | Mark Infringed | Court | Civil Action No. |
|---|---|---|---|---|
| Nightclub | Allentown, Pa. | CAESARS PALACE | U.S.D.C., E.D.Pa. | 70–3236 |
| Operation of a (1) motel offering, (2) restaurant, (3) casino | Lake Tahoe, Nevada | CAESARS PALACE | 2d Judicial D.C. of State of Nevada | 259953 |
| Health club, Massage Parlor | New York, New York | CAESARS, Seal Design, Romanesque Letters, Design Mark | U.S.D.C., S.D.N.Y. | 73 CIV 3012 |
| Hotel, restaurant, entertainment and art gallery services | Miami Beach, Florida | CAESARS PALACE Romanesque Letters Design Mark | U.S.D.C., S.D.Fla. | 72–373 CIV–JE |
| Nightclub | Chattanooga, Tenn. | CAESARS PALACE Romanesque Letters Design Mark, Seal Design | U.S.D.C., E.D.Tenn. | 6464 |
| Hair stylists services and sale of hair grooming gel, hair spray, hair conditioner and shampoo products | Memphis, Tenn. | CAESARS PALACE Romanesque Letters | U.S.D.C., W.D.Tenn. | C–68–218 |
| Nightclub | Omaha, Nebraska | CAESARS PALACE Romanesque Letters Design Mark | U.S.D.C., Neb. | CV 71–0–178 |
| Motel | Port Ewen, New York | Seal Design, Romanesque Letters, Design Mark | U.S.D.C., S.D.N.Y. | 71 CIV 4151 |
| Nightclub | Puerto Rico | CAESARS PALACE Romanesque Letters Design Mark | U.S.D.C., Puerto Rico | 817–71 |
| Nightclub | Omaha, Nebraska | CAESARS | U.S.D.C., Nebraska | CV 72–0–235 |