191 N.J. Super. 411 (1983)
467 A.2d 268
THE CHRISTIAN SCIENCE BOARD OF DIRECTORS OF THE FIRST CHURCH OF CHRIST, SCIENTIST, IN BOSTON, MASSACHUSETTS, AND THE BOARD OF TRUSTEES OF THE CHRISTIAN SCIENCE PUBLISHING SOCIETY, PLAINTIFFS,
v.
DORIS W. EVANS, STEPHEN T. EVANS, ROY DOBBELAAR, A. WILLIAM FREY, JOANNE JANNUZZI, RUTH PFEIFER AND MARY BETH SINGLETERRY, AS MEMBERS OF THE BOARD OF TRUSTEES OF THE FIRST CHURCH OF CHRIST, SCIENTIST, PLAINFIELD, NEW JERSEY AND THE FIRST CHURCH OF CHRIST, SCIENTIST, PLAINFIELD, NEW JERSEY, ALSO KNOWN AS THE INDEPENDENT CHRISTIAN SCIENCE CHURCH, PLAINFIELD, NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Union County.
June 17, 1983.
*414 John L. McGoldrick for plaintiffs (McCarter & English, attorneys; John L. McGoldrick, of counsel and on the brief; Roslyn S. Harrison, on the brief; Louis Kunin and Ronald S. Kadden, members of the New York bar, on the brief).
James J. Shrager for defendants (Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, attorneys; James J. Shrager, of counsel and on the brief; Susan R. Kaplan, Bronna G. Levin and Fran R. Robins-Liben, on the brief).
KENTZ, J.S.C.
This action was instituted by plaintiffs to enjoin the continued use of "Christian Science" or "Church of Christ, Scientist" by defendants in reference to their church and bookstore. The relief sought is predicated on alleged violations of trademark infringement and unfair competition. A brief overview of the *415 parties involved as well as the historical background is appropriate at the outset.
Plaintiff Christian Science Board of Directors (board) is a Massachusetts corporation organized to conduct the business of The First Church of Christ, Scientist in Boston, Massachusetts (mother church) which is considered the spiritual and administrative center of the worldwide organization commonly known as the Christian Science Church. Plaintiff Board of Trustees of The Christian Science Publishing Society (publishing society) is a trusteeship pursuant to a deed of trust given in 1898 by Mary Baker Eddy (Eddy), the founder of the Christian Science Church. This group is the publishing segment of the mother church, subject to the authority and direction of the board. Defendant The Independent Christian Science Church of Plainfield, New Jersey (Plainfield church) is a religious corporation of the State of New Jersey conducting its activities in Plainfield. The individual defendants Doris W. Evans, Stephen T. Evans, Roy Dobbelaar, Ruth Pfeifer, Joanne Jannuzzi[1] and Mary Beth Singleterry are all members of the board of trustees of the Plainfield church, the governing body for defendant church.
Christian Science refers to a religion founded and developed by Eddy in the late 19th century as a result of her discovery of a mental or spiritual means of healing ailments and illnesses. Initially, she entered into an association with several other people who sought to learn the practical healing techniques associated with her beliefs. Eddy published a book in 1875 entitled Science and Health With Key to the Scriptures which has evolved into the denominational textbook.
As time went on, it became clear to Eddy that a more structured organization should be established to preserve her teachings and to maintain the integrity of her beliefs. The more formal church was then organized in the late 1870's by Eddy and subsequently reorganized into what is now known as *416 the mother church. She also established subsidiary organizations to aid in promoting and strengthening her religious system, including the publishing society, Christian Science Reading Rooms, Christian Science Board of Lectureship, Christian Science Committee on Publications and the Massachusetts Metaphysical College which was later assumed by the Christian Science Board of Education of the mother church.
Eddy also compiled the Church Manual which delineates the structure and organization of both the church and the board of directors. It also provides guidelines for matters of religious practice and morality. All activities of each member church or society are dictated by the Church Manual, creating what has been termed as a melding or fusion between the teachings, organizations, structure and practice of the Christian Science denomination.
The Christian Science Church, as opposed to other religions, has a centralized publishing segment emanating from the mother church which provides literature for use by the member churches and societies. These materials are distributed to the Christian Science Reading Rooms operated and maintained by local branches across the United States.
Within the Christian Science denomination groups, which hold regular services for worship, utilizing a standard liturgy, are described as either a branch church or a society. The number of members determines whether a group is to be designated as a branch church or a society. There are approximately 1,600 branch churches and 450 societies in the United States. In New Jersey there are 47 churches out of a total of 51 branches. Following the provisions of the Church Manual, the formal name of the mother church is The First Church of Christ, Scientist while branch churches have the formal designation of First Church of Christ, Scientist. Subsequent branch churches in the same city are entitled Second, Third, etc. Church of Christ, Scientist. However, it appears that the more commonly known name of Christian Science Church has been used by church *417 leaders, church members and the public over the years to refer to the branches and societies as well as to the mother church. Moreover, the designation Christian Science Church has been extensively used in plaintiffs' publications in reference to the mother church and its branches.
The operative facts are undisputed. On June 6, 1977 plaintiffs notified defendants that their recognition as a branch church was withdrawn and that defendant church no longer had any legal right to publicly identify itself as a Church of Christ, Scientist, a Christian Science Church or to use "Christian Science" in connection with its religious activities. This disaffiliation apparently arose as a result in part of a religious doctrinal dispute concerning which party's course of conduct comported more closely with the teachings of Eddy.
Subsequent to the actions by plaintiffs in dissolving defendants' relationship with the mother church, defendants officially adopted a new method of identifying their church and reading room, using the name, Independent Christian Science Church of Plainfield, New Jersey. The Plainfield church also terminated its status as a religious corporation, which had been obtained pursuant to N.J.S.A. 16:3-1 et seq. on or about December 23, 1923, and reincorporated as a general religious corporation under N.J.S.A. 16:1-1 et seq.[2] The corporate name was then changed to Independent Christian Science Church of Plainfield, New Jersey.
As stated earlier, this suit was instituted by plaintiffs to enjoin defendants from using "Christian Science" or "Church of Christ, Scientist" in relation to their church and reading room in Plainfield, New Jersey and any acts likely to cause confusion, mistake or deception as to defendants' relationship with plaintiffs. Essentially the mother church is striving to have the *418 Plainfield church identified in a manner which would clearly indicate to the public that there is no connection between the two religious organizations.
The basic question here is whether the disaffiliated defendants have the right to use "Church of Christ, Scientist" or "Christian Science" to identify their religious organization which is no longer affiliated with the mother church. Plaintiffs argue that this matter simply involves a trademark infringement as to the words "Christian Science" and that another organization cannot use a similar name if it could result in a likelihood of confusion.
Plaintiffs assert initially that the protection of a trademark does not necessarily depend on federal registration but that such protection may be based on rights obtained through the appropriation and use of a mark. Weiner King, Inc. v. Weiner King Corp., 407 F. Supp. 1274, 1280 (D.N.J. 1976), rev'd and remanded on other grounds 546 F.2d 241 (1976). It is argued that such protection is afforded since the name or mark in question identifies an owner or signifies an origin, connection or affiliation with an owner. Restatement, Torts 2d, § 715; 1 Nims, Unfair Competition and Trademarks (4 ed. 1947) at 514-516. Such affiliative significance affords a party a protectible interest to prevent public confusion or deception.
Plaintiffs' contention is that the designation "Christian Science" when used by the mother church or its branches is a valid and protectible mark since such use clearly designates an affiliation with the Church of Christ, Scientist. Moreover, since such use was extensively continuous and substantially exclusive, plaintiffs maintain that affiliative significance exists, thus creating a presumption of validity. As such, it is urged that this court should grant protective relief. Jandron v. Zuendel, 139 F. Supp. 887, 889 (N.D.Ohio 1955); Nat'l. Spiritual Assembly v. Nat'l. Assembly, 150 U.S.P.Q. 346, 354-355 (N.D.Ill. 1966). Additionally, plaintiffs point out that the mother church owns a registered service mark for the words "Christian Science" in *419 connection with their library services and that such ownership provides additional grounds for a ruling that the mother church has valid and protectible rights in the use of that phrase. Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 542 (2 Cir.1956).
It is further argued that an infringement of a federal service mark, whether such mark be registered or based upon common law, is found upon a showing that a likelihood of confusion exists. Caesar's World, Inc. v. Caesar's Palace, 490 F. Supp. 818, 823 (D.N.J. 1980). However, actual confusion need not be shown especially since courts have found such evidence practically impossible to obtain. Ibid.; Miles Shoes, Inc. v. R.H. Macy & Co., 199 F.2d 602, 603 (2 Cir.1952), cert. den. 345 U.S. 909, 73 S.Ct. 650, 97 L.Ed. 1345 (1953). Upon a showing of the likelihood of confusion, injunctive relief may be awarded. Jandron v. Zuendel, supra, 139 F. Supp. at 889. In fact, it is emphasized by plaintiffs that the Jandron court went as far as enjoining the use of the term "Christian Science Church or any confusing or misleading variant thereof." Ibid.
Moreover, plaintiffs assert that the use of the word independent does not sufficiently distinguish the Plainfield church so that any possible confusion is avoided. See Carnes v. Smith, 236 Ga. 30, 222 S.E.2d 322, 330 (1976); Lutheran Free Church v. Lutheran Free Church (not merged), 273 Minn. 332, 141 N.W.2d 827, 834 (1966). Such a contention is further supported by plaintiffs' argument that the term independent refers to attributes inherent in the Christian Science denomination as a whole. Those characteristics which demonstrate a tendency towards independence within the organization include the self-governing nature of the branches, a belief in each branch's right to be self-sufficient, strong and independent-thinking and a tendency within the religion as a whole towards independence from other Christian denominations. Based on these, plaintiffs argue that the addition of the word independent to the name used by the Plainfield church does not effectively avoid a likelihood of *420 confusion between the two organizations to adequately protect the mother church.
Furthermore, plaintiffs contend that defendants' prior involvement with the mother church imposes a higher standard upon the Plainfield church to avoid any likelihood of confusion. Although it is pointed out that the defendants' use of "Christian Science" would infringe upon plaintiffs' rights even if there had been no prior relationship between the parties, it is urged that the previous affiliation between the two greatly increases defendants' obligation to avoid confusion. Cyclonaire Corp. v. United States Systems, Inc., 209 U.S.P.Q. 310, 315 (D.Kan. 1980).
Finally, plaintiffs claim that the potential injury resulting from any use of confusing terms by defendants is irreparable and incalculable since plaintiffs' reputation and good will are affected. Such a threat, it is argued, provides the basis for injunctive relief. Purcell v. Summers, 145 F.2d 979 (4 Cir.1944).
The Plainfield church disputes plaintiffs' position, arguing that its use of "Christian Science" in the title of the religious organization does not violate either statutory or common law. Defendants claim that the subject phrase is generic and as such it is an indication of the nature or class of an article rather than evidence of its origin. Accordingly, such a descriptive term cannot be limited by a trademark or service mark since it identifies a product, not the producer, to the public. Cridlebaugh v. Rudolph, 131 F.2d 795, 801 (3 Cir.1942), cert. den. 318 U.S. 779, 63 S.Ct. 855, 87 L.Ed. 1147 (1943).
Moreover, assuming arguendo that plaintiffs do have valid service and trademarks for a limited use of "Christian Science," it is contended that the right of fair use entitles defendants to use the subject name without restriction, since registration is limited only to the goods and services specified in the registration certificate. Miller Brewing Co. v. C. Heileman Brewing Co., 561 F.2d 75, 79 (7 Cir.1977), cert. den. 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978). Because the registered name is applicable only to library services provided by the *421 mother church, defendants argue that they should be permitted to use "Christian Science" in the title of their church. It is asserted that there is no alternate name defendants can adopt which would appropriately and fairly describe their religious organization and any concomitant activities. Furthermore, if a mark is not inherently distinctive, legal protection as a trade or service mark cannot be granted without a further showing of secondary meaning. Caesar's World, Inc. v. Caesar's Palace, supra at 823; Time Mechanisms, Inc. v. Qonaar Corp., 422 F. Supp. 905, 911-912 (D.N.J. 1976). To prove secondary meaning, plaintiffs have the burden of proving that the "primary significance of the term in the minds of the consuming public is not the product but the producer." Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118-119, 59 S.Ct. 109, 113-114, 83 L.Ed. 73 (1938). The additional argument is presented that secondary meaning cannot transform a generic term into a trademark, regardless of any length of exclusive use. Schulmerich Electronics, Inc. v. J.S. Deagan, Inc., 202 F.2d 772, 778 (C.C.P.A. 1953).
Defendants agree that the appropriate measure in determining trademark infringement must be the previously mentioned "likelihood of confusion" test. However, defendants assert that the burden of proving such a likelihood has not been met by plaintiffs' arguments and proofs. In fact, it is claimed that the name chosen by defendants indicates a concerted effort to distinguish the Plainfield church from the mother church, rather than an intent to cause confusion, mistake or public deceit. It is argued that defendants have voluntarily and consistently demonstrated to the public that the Plainfield church is not affiliated with the mother church. Additionally, defendants maintain that no effort has been made to usurp the reputation and goodwill of plaintiffs and the name chosen by defendants was specifically intended to be dissimilar enough to prevent any threat of confusion. In sum, defendants contend that they seek only to practice the religion founded by Eddy and to clearly identify such beliefs in the name of their religious organization.
*422 It is also suggested that to allow plaintiffs the exclusive right to the words "Christian Science" would in effect create a monopoly, thus infringing upon defendants' constitutional rights to freedom of speech and freedom of religion. Defendants further argue that a restriction on the use of the name "Christian Science" creates an infringement on the right to practice the religion of one's choice.
In my opinion the resolution of this case clearly rests on a determination by the court as to plaintiffs' right to protection from possible trademark infringement and unfair competition resulting from the use of "Christian Science" by the defendant and not on constitutional grounds as urged by defendants. The sole issue is whether plaintiffs are entitled to the injunctive relief sought under the circumstances of this case.
The statutory and common law regarding the protection of trademarks is similarly applicable to the names of nonprofit religious organization. Nat'l. Spiritual Assembly v. Nat'l. Assembly, supra at 355. Moreover, such protection need not depend upon the ownership of a federally registered mark but may be based on appropriation and use. Weiner King, Inc. v. Weiner King Corp., supra at 1279. Upon a showing that a certain mark is deemed to be valid and protectable, infringement of both registered and unregistered marks may be found upon proof that a likelihood of confusion exists between the protected mark and the unprotected mark. Id. at 1280; Great A & P Tea Co. v. A & P Trucking Corp., 29 N.J. 455, 459-460 (1959).
As set out in Cyclonaire Corp. v. United States Systems, Inc., supra at 314, a four-prong test to determine the likelihood of confusion has developed. That test consists of a review of the following four elements:
(1) the degree of similarity between the protected mark and the allegedly infringing mark;
(2) the intent of the defendants in adopting the allegedly infringing mark;

*423 (3) the relation in use and manner of marketing between the goods marketed by defendant and those marketed by the plaintiff;
(4) the degree of care likely to be exercised by purchasers.
Although these elements were clearly established in reference to the sale of goods and services, it has been held that such guidelines are equally applicable to religious associations or corporations. Annotation, 37 A.L.R.3d 277, 284, § 2 (1971). See Purcell v. Summers, supra at 985; Hooper v. Stone, 54 Cal. App. 668, 202 P. 485, 487 (D. 1921). Moreover, there is no necessity that any actual confusion result, but only that confusion is likely. Caesar's World, Inc. v. Caesar's Palace, supra at 823-824. Furthermore, it has been held that a prior affiliation between parties imposes a greater duty to adopt a name clearly distinguishable from that of the original organization to avoid any possible confusion. Cyclonaire Corp. v. United States Systems, Inc., supra at 314.
Potential damage which may result from confusion between the parties' names has been deemed to be irreparable injury warranting injunctive relief since a party's reputation and good will may be threatened. Jandron v. Zuendel, supra at 889; Cape May Yacht Club v. Cape May Yacht & Country Club, 81 N.J. Eq. 454, 456 (Ch. 1913); Yale Electric v. Robertson, 26 F.2d 972, 974 (2 Cir.1928). It has been pointed out that "the right to an injunction does not depend upon the right to the use of a name but upon the right to be protected against its unfair use by others." Purcell v. Summers, supra at 990.
I find no merit in defendants' argument that their method of identifying the Plainfield church sufficiently distinguishes it from the mother church. Although the defendants have preceded their use of "Christian Science" with the word independent, such an action does not automatically eliminate possible confusion between the two groups. The addition of an independent, or some other qualifying, adjective to the names of well known prior organizations has been held as insufficient to avoid confusion in cases involving both religious and fraternal organizations. Carnes v. Smith, supra at 330; Lutheran Free *424 Church v. Lutheran Free Church (not merged), supra at 834; Supreme Lodge of the World, Loyal Order of Moose v. Independent, Benevolent and Protective Order of Moose, 98 N.J. Eq. 598, 601-602 (Ch. 1925); Knights of the Ku Klux Klan v. Independent Klan of America, 11 F.2d 881, 883 (D.Ind. 1926). Although the defendants have not appropriated the formal name "Church of Christ, Scientist" most commonly associated with the mother church, the use of the phrase "Christian Science" does not sufficiently distinguish the Plainfield church from the mother church. Jandron v. Zuendel, supra at 889. As such, it is apparent that neither the use of independent nor the use of "Christian Science" can sufficiently distinguish the defendant group from plaintiffs to avoid the likelihood of confusion. Moreover, the possible damage to the reputation and good will that plaintiff have established over the years constitutes irreparable injury which warrants injunctive relief. Ibid; Purcell v. Summers, supra at 991. Since disaffiliation, plaintiffs can no longer effect any control over the actions or beliefs of the Plainfield church which further increases the likelihood of irreparable injury. Nat'l Spiritual Assembly v. Nat'l Assembly, supra at 355.
I also find no merit to defendants' argument that a restriction on the use of "Christian Science" would effectively impede their rights to free speech and freedom of religion. This case involves a property dispute concerning trade and service mark infringement and does not concern religious doctrines. There is no restriction sought herein on defendants' rights of religious freedom or free speech, but instead it is clear that plaintiffs only seek to restrain defendants from possibly confusing the public by use of a name for the Plainfield church which may indicate affiliation with the mother church. As such, defendants are not prevented from practicing the teachings of Eddy as the religion of their choice. Therefore, the First Amendment is not applicable and does not protect the defendants. As was stated in Nat'l Spiritual Assembly v. Nat'l Assembly, supra

*425 No question of religious liberty is involved. The New Mexico group has the right to organize and worship according to its dictates, but it has no right in doing so to utilize names and marks which will enable it to appropriate the goodwill which has been earned by an unrelated organization and to subject the general public to confusion, deception and mistake. [at 355]
I am not persuaded by defendants' argument that "Christian Science" is a generic term and thus unprotectable by the courts. Instead, I agree with the Jandron court which found that "... the term `Church of Christ, Scientist,' or `Christian Science Church' has one meaning, i.e. that it is a bona fide church of the Christian Science denomination related to the Mother Church." Jandron v. Zuendel, supra at 881. The name used by the Plainfield church may indicate to the public that a relationship exists with the mother church. It is clear from the record before me that the use of the term "Christian Science" in relation to defendants' organization creates just that likelihood of confusion that plaintiffs seek to avoid.
As to defendants' contentions that the defenses of laches and estoppel serve to preclude plaintiffs from the relief requested, there has been no showing in the facts here that such defenses apply. In courts of equity, laches is an affirmative defense which is applicable when inexcusable delay in commencing a suit causes prejudice to the defendant. Pfeffer v. Delran Tp., 159 N.J. Super. 497, 505 (Law Div. 1978). Since disaffiliation, plaintiffs repeatedly notified defendants of their objection to the use of either "Church of Christ, Scientist" or "Christian Science" in reference to the Plainfield church prior to initiating legal action. Based on the record before me, I find no delay in the institution of this action by the plaintiffs. However, assuming there was a delay, defendants have made no showing that any prejudice resulted. Likewise, I find no merit to the defense of estoppel since the essence of that defense is laches. Oysterman's Nat. Bank of Sayville v. Edwards, 112 N.J. Eq. 148, 105 (Ch. 1933). Estoppel requires a reliance by the asserting party which causes prejudice. Andersen v. Well Built Homes of *426 Central Jersey, Inc., 69 N.J. Super. 246, 225 (App.Div. 1961). As I have determined, such prejudice is not present here.
Similarly, I am not convinced that any alleged use of "Christian Science," "Church of Christ, Scientist" or any other variation thereof by third parties serves to justify such use by defendants as contended. Clearly any possible wrongdoing by others does not justify the potentially unfair behavior of defendants. Hoover Bag Co. v. Western Vacuum Bag Mfg., Inc., 141 U.S.P.Q. 639, 648 (S.D.N.Y. 1964). See also United States Jaycees v. San Francisco Junior Chamber of Commerce, 354 F. Supp. 61, 73-74 (N.D.Cal. 1972), aff'd per curiam 513 F.2d 1226 (9 Cir.1975).
Plaintiffs also seek attorney's fees and costs in connection with this action. As a general rule each party must bear his litigation expenses. Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 167 (1960). Since plaintiffs do not come within the purview of the exceptions to this rule as set forth in R. 4:42-9, they will not be allowed attorney's fees. However, plaintiffs are entitled to taxed costs pursuant to R. 4:42-8.
Based on the foregoing, the injunctive relief sought by the plaintiffs is granted and a judgment will be entered accordingly.
Please submit an appropriate form of judgment.
NOTES
[1] Joanne Jannuzzi is now known as Joanne Jannuzzi Roworth.
[2] N.J.S.A. 16:1-1 et seq. refer to the general method of incorporating as a religious society or congregation while N.J.S.A. 16:3-1 et seq. refer specifically to incorporation as a Church of Christ, Scientist in New Jersey.