199 N.J. Super. 160 (1985)
488 A.2d 1054
THE CHRISTIAN SCIENCE BOARD OF DIRECTORS OF THE FIRST CHURCH OF CHRIST, SCIENTIST, IN BOSTON, MASSACHUSETTS, AND THE BOARD OF TRUSTEES OF THE CHRISTIAN SCIENCE PUBLISHING SOCIETY, PLAINTIFFS-RESPONDENTS,
v.
DORIS W. EVANS, STEPHEN T. EVANS, ROY DOBBELAAR, A. WILLIAM FREY, JOANNE JANNUZZI, RUTH PFEIFER AND MARY BETH SINGLETERRY AS MEMBERS OF THE BOARD OF TRUSTEES OF THE FIRST CHURCH OF CHRIST, SCIENTIST, PLAINFIELD, NEW JERSEY AND THE FIRST CHURCH OF CHRIST, SCIENTIST, PLAINFIELD, NEW JERSEY, ALSO KNOWN AS THE INDEPENDENT CHRISTIAN SCIENCE CHURCH, PLAINFIELD, NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1984.
Decided March 1, 1985.
*163 Before Judges MORTON I. GREENBERG, O'BRIEN and GAYNOR.
James J. Shrager argued the cause for appellants (Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, attorneys; James J. Shrager, of counsel; Susan R. Kaplan, on the brief).
John L. McGoldrick argued the cause for respondents (McCarter & English, attorneys; John L. McGoldrick, of counsel; John L. McGoldrick and Roslyn S. Harrison on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Defendants appeal from part of a final judgment enjoining them from using certain words in the name of their church and in connection with their religious activities. The history of the Christian Science religion, the relationship of the parties, their *164 contentions in this lawsuit, and the trial judge's reasons for his decision are fully set forth in the published opinion. There is no need to restate them here. We affirm in part and reverse in part.
The final judgment entered by the trial judge on August 1, 1983, reads in pertinent part as follows:
ORDERED that Defendants shall be and hereby are permanently enjoined from:
1. Using, without the authority of the Plaintiffs, as the name of or designation for Defendants' church, religious group, Sunday School, society, association, organization, reading room or book store, now existing or which may in the future be organized by Defendants, any name or designation which includes any of the following terms or phrases:
(a) Church of Christ, Scientist;
(b) Christ Scientist;
(c) Christian Science Church;
(d) Christian Science; and
2. making a representation which is likely to lead the public to believe that Defendants are associated, affiliated, or connected with or are authorized or approved by Plaintiffs, provided that this paragraph 2 shall not prohibit Defendants from using, in a fair, truthful and non-deceptive manner, both as to form and content, the term "Christian Science" in phrases or sentences to refer to the religion developed by Mary Baker Eddy.
Plaintiff Christian Science Board of Directors is a Massachusetts corporation organized to conduct the business of the First Church of Christ, Scientist, in Boston, Massachusetts (Mother Church), and plaintiff Board of Trustees of the Christian Science Publishing Society is the publishing segment of the Mother Church, subject to the authority and direction of the Board of Directors (hereinafter both collectively referred to as plaintiffs). The individual defendants are members of the Board of Trustees of defendant First Church of Christ Scientist, Plainfield, New Jersey, now known as The Independent Christian Science Church, Plainfield, New Jersey[1] (hereinafter collectively referred to as defendant).
*165 Defendant was affiliated with the Mother Church for many years and operated under the name of "First Church of Christ Scientist, Plainfield, New Jersey." In 1977, as a result of a religious doctrinal dispute, plaintiffs withdrew their recognition of defendant as a branch. As part of the disaffiliation, defendant was notified that it no longer had any legal right to publicly identify itself as a "Church of Christ, Scientist," a "Christian Science Church," or to use the words "Christian Science" in connection with its religious activities.
Thereafter, defendant adopted the name "Independent Christian Science Church of Plainfield, New Jersey." It also terminated its status as a religious corporation pursuant to N.J.S.A. 16:3-1 et seq. (which refers specifically to incorporation as a Church of Christ, Scientist, in New Jersey) and reincorporated as a general religious corporation under N.J.S.A. 16:1-1 et seq. Defendant took a variety of steps designed to advise that it was no longer affiliated with plaintiff, although these steps were delayed in implementation. On this appeal, defendant does not challenge the restraint as to the use of the names "Church of Christ Scientist" or "Christ Scientist." Thus, the issue before us is limited to the portion of the judgment enjoining defendant from using the term "Christian Science Church" and "Christian Science."
Both parties agree that "Christian Science" is a religion founded by Mary Baker Eddy in 1866. The Mother Church was formed in 1892 by Miss Eddy. The Church Manual prescribes the formal name of the church as Church of Christ, Scientist. In each community the appropriate designation is the "First Church of Christ Scientist" followed by the name of the community. *166 If additional churches are formed in that community they are known as the Second, Third, etc. Church of Christ Scientist of that community. See N.J.S.A. 16:3-1 et seq. At the time of its affiliation with plaintiffs, defendant utilized the official name prescribed by the Church Manual. After disaffiliation it adopted the name, "Independent Christian Science Church, Plainfield, New Jersey," to which plaintiffs object.
The law protects corporate names to much the same extent that it protects trademarks and tradenames. The use by one organization of the name of another for the purpose of appropriating the standing and good will which the other has built up is a well recognized form of wrong known to the law as unfair competition. American Gold Star Mothers Inc. v. National Gold Star Mothers Inc., 191 F.2d 488, 489 (D.C. Cir.1951). In light of this, the trial judge has correctly framed the issue involved in this case:
In my opinion the resolution of this case clearly rests on a determination by the court as to plaintiffs' right to protection from possible trademark infringement and unfair competition resulting from the use of "Christian Science" by the defendant and not on constitutional grounds as urged by defendants. The sole issue is whether plaintiffs are entitled to the injunctive relief sought under the circumstances of this case. [191 N.J. Super. at 422.]
On this appeal defendant proffers a variety of arguments. Since we conclude that one of those arguments is dispositive, we limit ourselves to a discussion of that issue. We are satisfied that the words "Christian Science" are a generic term descriptive of the religion which is practiced by both plaintiffs and defendant.
The applicable general principles of trademark law are clearly summarized in Miller Brewing Co. v. G. Heileman Brewing Co., 561 F.2d 75 (7th Cir.1977), cert. den. 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978):
A term for which trademark protection is claimed will fit somewhere in the spectrum which ranges through (1) generic or common descriptive and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful.... *167 A generic or common descriptive term is one which is commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances. [Citations omitted.]
A merely descriptive term specifically describes a characteristic or ingredient of an article. It can, by acquiring a secondary meaning, i.e., becoming "distinctive of the applicant's goods" ... become a valid trademark. [Citations omitted.]
A suggestive term suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods. Such a term can be protected without proof of a secondary meaning.
An arbitrary or fanciful term enjoys the same full protection as a suggestive term but is far enough removed from the merely descriptive not to be vulnerable to possible attack as being merely descriptive rather than suggestive. [Id. at 79.]
It is the general common law rule that a generic term cannot be exclusively appropriated by one person or group. As described by Justice Brandeis, the term describes the product and not the producer. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938). Although these principles are generally referred to in terms of commercial enterprises, they are equally applicable to religious organizations. See Annotation, 37 A.L.R.3d 277, 284, § 2 (1971); Purcell v. Summers, 145 F.2d 979 (4th Cir.1944). Usually, suits to protect the use of a name are brought to enjoin unfair competition, as in this case.
Plaintiffs argue that it is of no moment that the formal name of their church is "First Church of Christ, Scientist." They contend that the words "Christian Science" are used in a variety of ways in connection with the Mother Church in Boston, i.e., its reading rooms, publications and the like. Therefore, plaintiffs contend that the words "Christian Science" have acquired an affiliative significance or a secondary meaning to the end that they cannot be used by anyone else in the name of a church espousing the Christian Science religion. They assert that the term "Christian Science" is a merely descriptive term which by acquiring a secondary meaning entitles plaintiffs to protection. We disagree.
*168 It is undisputed that the term "Christian Science" refers to the teachings and practices inherent in the religion founded by Mary Baker Eddy to which both plaintiffs and defendant profess allegiance. Although plaintiffs produced documentary evidence and oral testimony demonstrating that the term also refers to the Mother Church, we conclude that the primary significance to the public is the name of a religion. Simply stated, plaintiffs have no right to a monopoly in the name of a religion. As stated in Kellogg Co. v. National Biscuit Co.:
... The evidence shows only that due to the long period in which the plaintiff or its predecessor was the only manufacturer of the product, many people have come to associate the product, and as a consequence the name by which the product is generally known, with the plaintiff's factory at Niagara Falls. But to establish a tradename in the term "shredded wheat" the plaintiff must show more than a subordinate meaning which applies to it. It must show that the primary significance of the term in the minds of the consuming public is not the product but the producer. This has not been done. [305 U.S. at 118-119, 59 S.Ct. at 113-114.]
That language has equal application to this case. The Mother Church has also existed for a long period of time with only minimal schisms (but for a relatively short period of time in comparison to many other religions). As plaintiffs' expert explained, other groups who have considered themselves to be followers of Mary Baker Eddy and continuations of her church have not been of long duration. Therefore, because of this long period of almost exclusive existence, some people may have come to associate "Christian Science" with the Mother Church. Plaintiffs, however, have only shown a subordinate meaning which applies to the Mother Church. That is insufficient to establish a tradename entitled to protection.
An argument similar to that advanced by plaintiffs was made in McDaniel et al. v. Mirza Ahmad Sohrab et al., 27 N.Y.S.2d 525 (1941), aff'd 262 A.D. 838, 29 N.Y.S.2d 509 (App.Div. 1941), where members of a Bahai congregation seceded and thereafter conducted classes, meetings and lectures without the authority of the Mother Organization which brought suit, claiming that it was the only group authorized to use the Bahai name. In *169 dismissing the complaint for failure to state a claim, the court held:
The plaintiffs have no right to a monopoly of the name of a religion. The defendants, who purport to be members of the same religion, have an equal right to use the name of the religion in connection with their own meetings, lectures, classes and other activities.[2] [Id. at 527]
Plaintiffs are the owners of a federally registered service mark in the term "Christian Science" for "Library services, namely, providing and maintaining reading rooms where religious and related writings, publications and recordings are available." Plaintiffs are also the owners of federally registered trademarks for several publications of the publishing society. Plaintiffs do not own a federal service mark registration for the designation "Christian Science" in connection with their own church, religious group, society and/or association.[3] Generic terms may not be registered as a trademark or a tradename, see Schulmerich Electronics Inc. v. J.C. Deagan, Inc., 202 F.2d 772 (C.C.P.A. 1953), and even if registered a generic or common descriptive term is not entitled to protection. See Miller Brewing Co. v. G. Heileman Brewing Co., 561 F.2d 75 (7th Cir.1977), cert. den. 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978). On the other hand, the protection afforded a trademark is not limited to goods specified in the registration, but goes to any goods which are likely to cause confusion in the public's mind, the so-called "related goods" doctrine. See Hindu Incense v. Meadows, 692 F.2d 1048, 1050-51 (6th Cir.1982). Plaintiffs contend that the name used by defendant for its *170 church does create confusion and therefore it is entitled to protection both at common law as well as pursuant to their registered names.
The trial judge found "that the use of the term `Christian Science' in relation to defendants' organization creates just that likelihood of confusion that plaintiffs seek to avoid." 191 N.J. Super. at 425. In reaching that decision the trial judge relied heavily on Jandron v. Zuendel, 139 F. Supp. 887 (N.D. Ohio 1955), in which the present plaintiffs were also plaintiffs. His reliance upon that case is misplaced. While the trial judge in Jandron, in granting summary judgment in favor of plaintiffs, did enjoin defendants from using the term "Church of Christ, Scientist" and "Christian Science Church," he found a Fourth Circuit case to be "dispositive of this question." The case upon which the district court judge relied, Purcell v. Summers, 145 F.2d 979 (4th Cir.1944), is not authority for the action taken by the federal judge in Jandron, nor by the trial judge in this case. In Purcell, the dissidents selected precisely the same name as they had used when they were affiliated with the Methodist Church, i.e., "Methodist Episcopal Church, South." In the course of its opinion, the Fourth Circuit said:
It is said that the words "Methodist" and "Episcopal" are generic terms and that defendants have the right to use them for that reason, but defendants are not proposing to use either of these words in a new name so different from the old that no confusion could result. They are using the precise name of the old church; and the question is, not whether they have the right to use "Methodist" or "Episcopal" in a new name so constructed as to avoid confusion, but whether they have the right to use the old name in a way that amounts, as we think it does, to implied misrepresentation to the damage of plaintiffs. [Id. at 988]
The court recognized that generic terms describing a religion may be used in the name of a church espousing that religion but may not be used in the precise same configuration as they were previously used so as to create confusion. That is not the situation in this case. Defendant was previously known as "First Church of Christ Scientist, Plainfield, New Jersey." Their new name "Independent Christian Science Church, Plainfield, New Jersey" is entirely different although it does incorporate *171 the name of the religion which they espouse. Thus, the case of Purcell v. Summers is inapposite to our conclusion in this case.
After a careful review of the evidence and the applicable law, we conclude that the term "Christian Science" when used in the name of defendant's church is a generic term in that its primary significance is the religion founded by Mary Baker Eddy. Plaintiffs have failed to show that the primary significance of the term in the minds of the public is the producer (Mother Church) and not the product (the religion). They concede that the words "Christian Science" refer to the religion but assert that they have acquired an affiliative significance or secondary meaning. While long use of the term by plaintiffs may cause some people to associate it with the Mother Church, plaintiffs were required to show more than a subordinate meaning which applies to it. Furthermore, the changes made by defendant to distinguish itself from the Mother Church were sufficient to avoid a potential for confusion. Thus it was error for the trial judge to enjoin the use of the term "Christian Science" by defendant in the name of its church which espouses the religion founded by Mary Baker Eddy.
We reach a different conclusion however as to the use of the term "Christian Science Reading Room." There is no question that the Mother Church has used the generic term "Christian Science" in connection with their reading rooms. To permit defendant to use the identical name would cause the type of confusion referred to in the cases. Use of the generic term "Christian Science" in the name of another church espousing that religion renders the term purely generic. However, use of the term "Christian Science" in connection with a "reading room" renders the term merely descriptive which, if it has acquired a secondary meaning becomes a valid tradename. Defendant undoubtedly recognized this in its offer of judgment in which it agreed to be restrained from using the following names or designations:

*172 (a) "Christian Science Reading Room"
(b) "Independent Christian Science Reading Room" or
(c) Any variation of the aforesaid names or designations using the words "Reading Room."
In light of plaintiffs' registered service mark for reading rooms, the long use by plaintiffs of the term "Christian Science Reading Room" and the potential for confusion, defendant will be restrained in accordance with its offer of judgment as regard to use of the term "Christian Science" in connection with its reading room.
Reversed and remanded for the entry of judgment in favor of plaintiffs permanently enjoining defendant from using the terms "Church of Christ Scientist" or "Christ Scientist" in the name of their church or other religious activities and from using the terms "Christian Science Reading Room," "Independent Christian Science Reading Room," or any variation of the aforesaid names or designations using the words "reading room." The judgment shall provide that defendant may use the name "Independent Christian Science Church, Plainfield, New Jersey" as the name of their church. Paragraph two of the judgment below is affirmed. No costs.
GAYNOR, J.A.D., dissenting.
I respectfully dissent from the majority's reversal of the grant to plaintiff of injunctive relief relating to defendants' use of the term "Christian Science" in the name of their church. In my view, there was adequate, substantial and credible evidence to support the trial judge's findings and conclusions that "Christian Science" is not a generic term but rather one which denotes a relationship with the mother church and that the use thereof by defendants in the name of their church is likely to cause confusion as to the relationship between the two organizations. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474 (1974). Thus, I would affirm the judgment of the trial court substantially for the reasons expressed by Judge Kentz in his published opinion (191 N.J. Super. 411).
*173 I would also note that, although the facts in Purcell v. Summers, 145 F.2d 979 (4th Cir.1944), are distinguishable from the present case, as there the dissidents sought to appropriate the name previously used by one of the three church denominations which had been merged into The Methodist Church, the principles enunciated therein by the court are applicable to the resolution of the subject controversy.
NOTES
[1] During the pendency of this appeal, an order was entered by the trial judge on January 25, 1984 to secure enforcement of the injunction pursuant to R. 2:9-1(a) and R. 1:10-5. In the proceedings leading to that order, defendants agreed, pending this appeal, to adopt the name of:

Plainfield Community Church
An Independent Church Practicing Christian Science.
However, defendants strongly objected to the restrictions placed upon the phrase "An Independent Church Practicing Christian Science" as to type, style, color, illumination and height of the letters.
[2] Plaintiffs correctly observe that a contrary conclusion was reached in National Spiritual Assembly of the Baha'is v. National Spiritual Assembly of the Baha'is Inc., 150 U.S.P.Q. 346 (N.D.Ill. 1966), after a full trial and extensive findings by the District Judge. It is noted however that the New Mexico group went well beyond mere use of the Bahais' name in the name of a church as contrasted with defendant in this case.
[3] Contrast the federally registered trademark-servicemark for "Jesuit" received into evidence as Exhibit P-48 which, in addition to religious publications, was for "Operation of a religious order, religious communities, missions, retreats, social service organizations and scientific observations, ...."