**PEDI–CARE, INC., Plaintiff,**

v.

**PEDI–A–CARE NURSING, INC., Defendant.**

Civ. A. No. 86–3715.

United States District Court, D. New Jersey.

March 19, 1987.

**452**

Roger W. Herrell, Robert G. McMorrow, Jr., and Dann Dorfman, Herrell & Skillman, Philadelphia, Pa., for plaintiff.

Needleman, Needleman, Caney, Stein & Kratzer, Ltd., Collingswood, N.J., for defendant.

RODRIGUEZ, District Judge.

■ This case is before the court on the motion of plaintiff Pedi-Care, Inc. for a preliminary injunction to enjoin defendant Pedi-A-Care Nursing, Inc. from continuing to do business under its name on the grounds that defendant's use of a name which is confusingly similar to plaintiff's registered service mark[1] constitutes an infringement of that service mark under the Lanham Trade-Mark Act, 15 U.S.C.

§§ 1051–1127 (1982) as well as unfair competition under New Jersey common law.[2]

Plaintiff is a Pennsylvania corporation engaged in the business of providing in-home pediatric health care and nursing services. Its principal place of business is in Hatfield, Pennsylvania. Plaintiff began doing business in Pennsylvania in February 1983 and has experienced rapid growth in the number of patients served since that time. Plaintiff began serving New Jersey patients in April 1984. There is no indication in the record, however, as to the percentage of plaintiff's patients that are New Jersey residents. On September 9, 1985 plaintiff qualified for a Certificate of Authority to transact business in New Jersey and continues to transact business here. On May 27, 1986 plaintiff's service mark, Pedi-Care, Inc., was registered on the principal register of the U.S. Patent and Trademark Office.

Defendant is a New Jersey corporation engaged in the same business as plaintiff. Defendant was incorporated on May 14, 1985 under the name Pedi-A–Care Nursing, Inc. and has since operated under that name. Its principal place of business is in Hammonton, New Jersey.

Defendant claims that it does business solely in a seven-county area in New Jersey south of Mercer County[3] and that it has no intention of expanding its service area beyond these seven counties. Defendant presently serves only one patient and at no time since its inception has it served more than five patients.

## ANALYSIS

To obtain a preliminary injunction the moving party must show (1) a reasonable probability of eventual success in the litigation, and (2) that irreparable injury will ensue if relief is not granted. *West Indian Co., Ltd. v. Government of the Virgin Islands*, 812 F.2d 134, 135 (3d Cir.1987);

---

1. A service mark is a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others. 15 U.S.C. § 1127.

2. Unfair competition includes common law service mark infringement. See *Caesars World,*

*Inc. v. Caesar's Palace,* 490 F.Supp. 818 (D.N.J. 1980).

3. The counties are Ocean, Atlantic, Burlington, Camden, Cumberland, Gloucester, and Salem.

*Kennecott Corp. v. Smith,* 637 F.2d 181, 187 (3d Cir.1980). In addition, the court may consider the possibility of harm to other interested persons from the grant or denial of relief, and the public interest. *Kennecott,* 637 F.2d at 187.

## PROBABILITY OF SUCCESS IN THE LITIGATION

■ In order to prevail on a statutory or common law trademark or service mark infringement claim, the plaintiff must establish that the names or symbols are valid, legally protectible trademarks or service marks; that they are owned by the plaintiff; and that the defendant's subsequent use of the same or similar marks to identify goods or services is infringing, *i.e.,* is likely to create confusion as to the origin of the goods or services. *Estate of Presley v. Russen,* 513 F.Supp. 1339, 1362 (D.N.J. 1981) (citations omitted). Plaintiff claims the exclusive right to use its service mark in the market area served by defendant. It asserts that defendant's use of the name Pedi-A–Care Nursing, Inc. is a colorable imitation of plaintiff's service mark that is likely to cause confusion.

## LANHAM ACT CLAIM

■ 15 U.S.C. § 1114 provides in relevant part:

(1) any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark ... in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; ...

shall be liable in a civil action by the registrant ...

In order for plaintiff to establish defendant's liability under this section it would need to show that defendant has used or is using a colorable imitation[4] of plaintiff's

registered service mark and that this use is likely to cause confusion, mistake or deception. Plaintiff contends that defendant's use of the name Pedi-A-Care Nursing, Inc. is likely to cause confusion of the public.

■ As evidence of its right to use its service mark to the exclusion of defendant, plaintiff relies upon 15 U.S.C. § 1115(a), which provides in relevant part:

(a) Any registration ... of a mark registered on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of registrant's exclusive right to use the registered mark ... but shall not preclude an opposing party from providing any legal or equitable defense or defect which might have been asserted if such mark had not been registered.

Defendant argues in opposition that when it began using its name it had no knowledge of plaintiff's prior use of its service mark. Defendant also points out that it began using its name before plaintiff's service mark became registered. Defendant therefore contends that these factors provide a defense sufficient to overcome any right which plaintiff claims to use its service mark in defendant's marketing area.

Just as § 1115(a) provides that a registered mark is prima facie evidence of the registrant's exclusive right to use its mark, § 1115(b) provides that the registration of a mark which has become incontestable[5] constitutes conclusive evidence of the registrant's right to use the mark, except when certain defenses or defects are established. The defenses provided by subdivisions (1) through (6) of subsection (b) also apply to registrations which have not yet become incontestable, such as plaintiff's registration. *Matador Motor Inns, Inc. v. Mata-*

**4.** A colorable imitation is one which is likely to confuse the average person who uses reasonable and ordinary discrimination, and to cause such person to believe that the second mark represents the product represented by the first mark. *Coca-Cola Co. v. Cleo Syrup Corp.,* 48 F.Supp. 567 (E.D.Mo.1942), *aff'd* 139 F.2d 416 (8th Cir.

1943), cert. denied, 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074 (1944).

**5.** An incontestable registration is one which has subsisted on the Principal Register for more than five years. 15 U.S.C. § 1065.

*dor Motel, Inc.,* 376 F.Supp. 385 (D.N.J. 1974).

Defendant relies upon the defense made available by § 1115(b)(5) which, when read in conjunction with § 1115(a), would accord prima facie evidentiary status to plaintiff's exclusive right to use the service mark unless defendant is able to establish:

> That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party ... from a date prior to registration of the mark....

15 U.S.C. § 1115(b)(5).

 Here defendant has continually used its name since its incorporation, which was more than one year before the plaintiff's mark became registered on the principal register. · Defendant claims that it adopted its name without knowledge of plaintiff's prior use of its mark. Therefore, if defendant is able to establish this lack of knowledge it would be entitled to the defense provided by § 1115(b)(5). However, this alone would not defeat plaintiff's right to exclusively use its service mark, but would merely impugn the status of plaintiff's registration as prima facie evidence of an exclusive right to use the mark. This is because it is the appropriation and use, and not federal registration, of a mark which gives rise to the right to use it. *Wiener King, Inc. v. Wiener King Corp.,* 407 F.Supp. 1274 (D.N.J.1976), *rev'd and remanded without published opinion,* 546 F.2d 421 (3d Cir.1976), *cert. denied,* 430 U.S. 916, 97 S.Ct. 1328, 51 L.Ed.2d 594, *aff'd* 577 F.2d 731 (3d Cir. 1978). The Lanham Act does not create the right to a mark, it only recognizes the right acquired through use. *Id.* at 284,

citing, *Radio Shack Corp. v. Radio Shack Inc.,* 180 F.2d 200 (7th Cir.1950). This is a common law right which exists independently of statutory registration provisions. *Caesar's World, Inc. v. Caesar's Palace,* 490 F.Supp. 818 (D.N.J.1980). Therefore, in order to assess the probability that plaintiff will be successful in this litigation, it is necessary to examine the common law claim that plaintiff asserts.

## COMMON LAW CLAIM

 Through its appropriation of the service mark Pedi-Care, Inc. in February 1983 and its use of the mark since that time, plaintiff has established a common law service mark right. Assuming the same market area, a trademark-[6] owner, having proved priority of appropriation and use, is afforded protection if the subsequently used mark would be likely to cause confusion of the source or origin of the goods or services involved. 407 F.Supp. at 1280, citing *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 415, 36 S.Ct. 357, 361, 60 L.Ed. 713 (1916).

 In order to determine whether a likelihood of confusion exists,[7] a four-prong test is applied.[8] *Christian Science Bd. of Directors v. Evans,* 191 N.J.Super. 411, 467 A.2d 268 (Ch.Div.1983). The court must examine: (1) the degree of similarity between the protected mark and the allegedly infringing mark; (2) the intent of the defendant in adopting its mark; (3) the relation in use and manner of marketing between the [services] marketed by defendant and those marketed by plaintiff; and (4) the degree of care likely to be exercised by purchasers.

 Performing this analysis, the court finds a high degree of similarity between

---

**6.** The only difference between a trademark and a service mark is that a trademark identifies goods while a service mark identifies services. *Caesar's World,* 490 F.Supp. at 822.

**7.** Likelihood of confusion exists when consumers viewing the mark would probably assume that the service it represents is associated with the source of a different service identified by a similar mark. *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1229 (3d Cir.1978).

**8.** The court in *Caesar's World, supra* utilized a test encompassing ten factors. Two of those factors which are potentially relevant here but not included in the four-prong test cited are (1) the evidence of actual confusion, and (2) the extent to which the targets of the parties' sales efforts are the same.

the names Pedi-Care and Pedi-A-Care. Regarding defendant's intent in adopting its name, the affidavits of defendant's principals assert that they were unaware of plaintiff's existence when they incorporated under the Pedi-A-Care name. There is no evidence of record to contradict this assertion. The services of plaintiff and defendant are highly similar in their use and manner of marketing. The same patients would ordinarily be candidates for the services of both. The services would be marketed primarily through advertisements, as well as through referrals, mostly from hospital staff members. Finally, although the services are rendered in an industry that is imbued with a public interest, given the similarity of the service marks, the court believes that the degree of care which purchasers will be likely or able to exercise in distinguishing between plaintiff's and defendant's services is low. On balance, the court finds that there is a likelihood of confusion between the two service marks.

▮ Although plaintiff and defendant disagree as to whether actual confusion has already resulted from their concurrent use of similar service marks, it is not necessary to resolve this disagreement, for a showing of actual confusion is not necessary to establish service mark infringement, but only that confusion is likely. *Id.* at 423, 467 A.2d 268. *Accord Caesar's World,* 490 F.Supp. at 823.

The heart of defendant's case lies not in establishing that its name and plaintiff's name are not confusingly similar, but in its contention that plaintiff's common law right does not extend into defendant's seven-county marketing area. In support of this contention defendant relies on its alleged innocent adoption of its service mark, and upon the fact that plaintiff failed to register as a foreign corporation in New Jersey until September 9, 1985, nearly four months after defendant incorporated and began operating under its service mark, and upon the fact that defendant, upon its incorporation, was permitted to use the name Pedi-A-Care Nursing, Inc.

N.J.Stat.Ann. § 14A:2–2(5) (Supp.1986) provides in relevant part:

> The filing in the office of the Secretary of State of the certificate of incorporation of a domestic corporation ... shall not preclude an action ... by any person adversely affected to enjoin ... the use of the corporate name in violation of the rights of such person, whether on principles of unfair competition or otherwise.

▮ By being permitted to incorporate in New Jersey under the name Pedi-A-Care Nursing, Inc. defendant did not gain any greater rights against plaintiff with respect to its name and service mark. *See Caesar's World,* 490 F.Supp. at 826, *accord Interpace Corp. v. Lapp, Inc.,* 574 F.Supp. 1072 (1982), *rev'd on other grounds,* 721 F.2d 460 (3d Cir.1983). In addition, N.J. Stat.Ann. § 14A:13–11(2) provides:

> The failure of a foreign corporation to obtain a certificate of authority to transact business in this state shall not impair the validity of any contract or act of such corporation....

Thus plaintiff's acts in appropriating and using its service mark in New Jersey accorded it a common law right which is not defeated by its failure to register as a foreign corporation in New Jersey until September 1985. In order to defeat plaintiff's right to use its service mark in the seven-county marketing area, defendant would need to establish that plaintiff's right, established in Pennsylvania, did not extend into the seven-county area and that defendant first appropriated and used its mark in this area.

Plaintiff claims that it first began serving New Jersey patients in April 1984, approximately fourteen months after it began operating in Pennsylvania and more than a year before defendant came into existence. The court in *Wiener King* set forth an analysis based on R. Callmann, *The Law of Unfair Competition, Trademarks and Monopolies* (3d ed. 1967). The court reasoned that the prior user of a service mark was entitled to protection not only in the immediate area of its current physical plant, but also within the area to which it can reasonably be expected to expand. 407

F.Supp. at 1281. This is referred to in the Callmann treatise as the "zone of potential expansion." 3 Callmann § 76.3(b)(2) at 317. The court further indicated that the fame of a mark may extend beyond the immediate selling market, even in the absence of advertising by the mark's owner. The area thus affected is referred to as the "reputation zone". 407 F.Supp. at 1282, quoting 3 Callmann § 76.3(b)(1) at 312.[9]

Applying the foregoing analysis to this case, the court finds that plaintiff's common law rights in its service mark extended into the marketing area served by defendant, even before defendant incorporated. In her affidavit of September 19, 1986 Gloria Chancey, plaintiff's president states:

> Pedi-Care enjoys substantial business and goodwill in Philadelphia and the surrounding counties in Pennsylvania and New Jersey. Pedi-Care has provided services to patients in various areas of the state of New Jersey, including the Trenton area and the Southern New Jersey shore area ... Pedi-Care is well known and recognized to hospital personnel in the Pennsylvania/New Jersey area, enjoys a favorable reputation among the hospital staffs, and receives a substantial number of patient referrals from hospital staff personnel in Pennsylvania and New Jersey. A large number of patient referrals have been directed to Pedi-Care from nursing and staff personnel at Children's Hospital of Philadelphia.

This statement bears out the analysis above, for not only was there a reasonable expectation that plaintiff would expand into defendant's marketing area, plaintiff in fact expanded into the area. In addition, with respect to the reputation zone, plaintiff asserts that it has established a reputation among, and has received patient referrals from, staff members of Children's Hospital of Philadelphia and other hospitals in Pennsylvania and New Jersey. In her deposition, Wendy Varga, defendant's sec-retary-treasurer states that it is very common for children who live in New Jersey to be treated at Children's Hospital of Philadelphia and that any child from central or southern New Jersey with severe problems will eventually be treated at Children's Hospital or St. Christopher's Hospital for Children, also in Philadelphia. (Dep. pp. 51–52, 62–63). From this it is reasonable to infer that one way in which plaintiff's reputation can be carried to New Jersey residents is through staff members of these hospitals, both located in an area where defendant does not contest plaintiff's prior common law right to the exclusive use of its service mark.

Defendant contends that plaintiff's September 7, 1984 letter to the New Jersey Department of Health stating that plaintiff had no intention of opening a facility in New Jersey supports defendant's claim of a prior right to use its service mark in the South Jersey marketing area. This claim is reinforced, asserts defendant, by the fact that plaintiff utilized the "Philadelphia Health Plan" forms for recording information regarding the New Jersey patients that plaintiff saw in April and May 1985.

Under the *Wiener King* analysis, these arguments must fail. The fact that plaintiff, on September 7, 1984, had no intention of opening a facility in New Jersey does not detract from the reasonable expectation that plaintiff's services would expand into the South Jersey area, immediately across the Delaware River from Philadelphia, especially in view of the fact that plaintiff did expand there.

Furthermore, if as defendant claims, it had no knowledge of Pedi-Care's existence when defendant incorporated in May 1985, it could not have known of the September 7, 1984 letter, for the letter would have notified anyone reading it of Pedi-Care's existence, and also of the fact that Pedi-Care intended to provide in-home services to New Jersey residents without establish-

---

**9.** The Callmann treatise has recently been revised. See R. Callmann, *The Law of Unfair Competition, Trademarks and Monopolies,* §§ 19.20 and 19.21 (4th ed. 1986). For a similar analysis, see J. McCarthy, *Trademarks and Un-*

ing a facility there.[10] In addition, another letter [11] from Pedi-Care to the New Jersey Department of Health, dated September 27, 1984, states that "Pedi-Care ... will continue to service New Jersey home care patients referred to them by Pennsylvania institutions ..." This is further evidence of plaintiff's prior right to use its service mark.

■■■■■ Defendant relies on language from *Wiener King* stating that "a prior user could not bar a subsequent user from using the mark in his own trading area" to support its right to use its name in South Jersey. However, this argument assumes the very fact required to be proved: that South Jersey is defendant's own trading area. As explained above, plaintiff is the prior user whose adoption and use of its service mark gave it the exclusive right to use the mark both in the Philadelphia area and in those areas to which it could reasonably be expected to expand. Confusingly similar marks may not coexist in the same trade area, and the first user of the mark achieves exclusivity by virtue of its common law right to protection. *Wiener King*, 407 F.Supp. at 1280.

The court therefore finds that plaintiff has established a reasonable probability that it will eventually succeed on the merits of its claim for common law service mark infringement.

### IRREPARABLE INJURY

Plaintiff claims that it will suffer irreparable harm if a preliminary injunction is not issued. It claims that harm will result in two ways: (1) loss of business to defendant, and (2) harm to its reputation and goodwill. It asserts that its reputation will be harmed if the quality of defendant's services is below the standard of plaintiff's service and if defendant's services are thought by the public to be rendered by plaintiff.

Defendant has not done any significant amount of advertising and has never had more than five patients. Thus it would seem that plaintiff would not stand to lose much business to defendant if defendant were permitted to continue using its name.

■■■■■ With respect to plaintiff's claim of harm to its reputation, no evidence has been adduced which would establish that defendant's services are of a quality inferior to plaintiff's services. However, it is not necessary for plaintiff to establish any measurable likelihood that its reputation will be injured in order to establish that irreparable injury will ensue. In *Christian Science Bd. of Directors*, the court enjoined defendant Independent Christian Science Church of Plainfield, New Jersey, a former branch church of the Christian Science Church, from continuing to use the words "Christian Science" after the mother church had withdrawn defendant's recognition as a branch church. The court stated that "Potential damage which may result from confusion between the parties' names has been deemed to be irreparable injury warranting injunctive relief since a party's reputation and good will may be threatened." [citations omitted] 191 N.J.Super. at 423. Here, as in *Christian Science*, even though a measurable likelihood of injury to plaintiff's reputation has not been shown, the potential exists that defendant's use of a name confusingly similar to plaintiff's service mark will result in damage to plaintiff's reputation. Should this eventuality transpire, the injury would be irreparable.

As mentioned at the outset of this opinion, in determining whether to issue a preliminary injunction, the court may take into account the possibility of harm to other interested persons. Defendant claims that it will suffer irreparable harm if it is enjoined from using its name. However, de-

---

*fair Competition,* §§ 26:5 and 26:8 (2d ed. 1984) and cases cited therein.

**10.** Defendant's argument seems to assume that plaintiff's intention not to establish a facility in New Jersey is fatal to its claim of entitlement to exclusive use of its service mark in New Jersey.

Where the services being rendered are in-home services, lack of a facility does not weaken the reasonable expectation of expansion.

**11.** Last exhibit to plaintiff's reply memorandum.

**458**

fendant's secretary-treasurer, while claiming that word-of-mouth advertising of defendant's services has been substantial, has admitted that the amount of money which defendant has spent on advertising has not been substantial. (Dep., p. 39). The insubstantiality of this advertising is bolstered by the fact that defendant has only one patient and has never had more than five patients. Therefore, the court is of the opinion that little, if any, harm will result to defendant from issuance of a preliminary injunction.

## CONCLUSION

Plaintiff has established a reasonable probability that it will eventually be successful in litigating its claim for service mark infringement against defendant and that irreparable injury will ensue if a preliminary injunction is not issued. Defendant is therefore preliminarily enjoined from using the name Pedi-A-Care Nursing, Inc. or any other name which would create a likelihood of confusion with plaintiff's service mark, Pedi-Care, Inc. in connection with rendering services.